same result can be reached substantially by preserving the forms, with which the profession are familiar, it would be the wisest course.

"The act to deprive ordinaries of jurisdiction in extradition cases, prevents conflicts with other States. It should have been extended, so as to include judges of the county courts.

"Another act of importance defining the duties of masters in chancery deserves special commendation, should it stand the test of Constitutional criticism. We refer to that clause of the act as of doubtful constitutionality, which makes the decision of the judge of the superior court, on questions of fact, and only allows an appeal to a jury, when said judge disagrees with the finding of the auditor or master."

The above report, together with the report of the special committee on "Delays in the administration of Justice," adopted, and a committee of five members of the Georgia Bar Association, were appointed to prepare a bill or bills in accordance therewith, to be submitted to the General Assembly at its next session.—ED.

---

WETTER *et al. vs.* UNITED HYDRAULIC COTTON PRESS Co.

*Supreme Court of Georgia, February 17, 1886.*

WILLS—CONSTRUCTION OF—CARDINAL RULE.   Titles.   Estates.   Res Adjudicata.. Marriage Settlement.

1. The will in this case (a copy of which appears in the opinion of the court) gave the property, by the first item, to the testatrix's daughter when she attained the age of twenty-one years, to have and to hold for herself and her heirs. The second item declared if said daughter should die leaving no issue or lineal heirs, that the property should go to the grandmother and aunt of said daughter, or if they be survived by said daughter, and the latter should subsequently die without issue then living, the property should go to the testatrix's next of kin then living. The third item directed the executor to transfer the property to said daughter at the time specified, or to the respective beneficiaries afterwards mentioned, at any time after the daughter's death without issue or lineal heirs then living:

Held, That the will created an estate for life in the daughter of the testatrix, with remainder to her children, or, in default of such children, to the other beneficiaries named; and that it did not invest the daughter with the fee, at her majority, determinable upon her dying without issue.

(a) The cardinal rule in construing a will is to seek diligently for the intention of the testator, regardless of technical rules; and when such intention is ascertained, to allow its full operation, provided it does not contravene any law or public policy.

624 The Georgia Law Reporter.

2. The effect of the marriage settlement in this case is not an open question.

Ejectment, from Chatham county.

The opinion states the facts.

Richards & Heyward; T. M. Norwood; Joseph A. Cronk; Lester & Ravenel, for plaintiffs in error.

Denmark & Adams; Chisholm & Erwin, for defendant.

[Jackson, C. J., being disqualified, Judge Clarke, of the Atlanta cir-cuit, presided in his stead.]

Clarke, J.—This is an action of ejectment in the usual form brought by Edward T. Wetter, Louisa A. Gould, (formerly Louisa A. Wetter), and Louis Knorr, as administrator upon the estates of Conrad and Meta Wetter, deceased, against The United Hydraulic Cotton Press Company to recover a wharf lot in Savannah, known as No. 14. The following is a statement of the facts upon which the plaintiffs rely to establish their title: The said Edward T., Louisa A., Conrad and Meta Wetter were the only children of Augustus P. and Sarah Alberta Wetter. The last named was the daughter of Mary E. Cobb, and was born April 5, 1834. While a minor she married Charles S. Arnold and had a marriage settlement with him. This settlement is dated June 2, 1848, and recites that she was entitled at the time of her marriage to an undivided three-sixteenth interest in the said wharf lot, which was inherited by her from her deceased aunt, Margaret L. Telfair, and that she was also entitled to an undivided six-sixteenth interest in said lot as divised to her by her deceased mother, Mary E. Cobb, "subject to the limitations contained in the will of the said Mary E. Cobb."

The uses and trusts declared and set forth in said marriage settlement are in the following language:

"In trust to and for the use, benefit and behoof of the said Sarah Alberta, not subject to the debts of her said husband, the said Charles S. Arnold, for and during the term of her natural life; and from and immediately after her death, then in further trust to and for the use, benefit and behoof of the said Charles S. Arnold during the term of his natural life, should he survive the said Sarah Alberta; and from and immediately after the death of such survivor, then to such child or children of the said Sarah Alberta as she may leave living at the time of he death, share and share alike, if more than one—the child or chil-dren of any deceased child to represent the deceased child—to them and their heirs forever; but in case there should be no child, then subject to disposition by last will and testament of the said Sarah Alberta."

Edward Padelford was named in said settlement as trustee for Mrs. Arnold.

Mary E. Cobb's will was probated on December 7, 1839, and read as follows :

"The last will and testament of Mary Eliza Cobb, in the name of God, amen.

"Knowing that it is the destiny of all to die, and being myself much enfeebled by disease, but of sound mind and memory, I make and publish this my last will and testament :

"First.—It is my will that my infant daughter, Sarah Alberta Addison Alexina Telfair Cobb, should she live to attain the age of twenty one years, become then the absolute owner of all the estate, real, personal and mixed, including choses in action, to which I have a lawful title, to have and to hold the same and her heirs forever. In the meantime I give to my executors herein named the custody and control of all said estate for the use and benefit of my said daughter.

"Second.—It is further my will, that if my said daughter should depart this life leaving no issue of lineal heirs, that the whole of the estate herein bequeathed should go and belong to my mother and my sister as tenants in common, and their heirs forever. And should they, too, be survived by my said daughter, and she, my said daughter, subsequently die without issue as aforesaid then living, then it is my will that the whole of my estate vest in and belong to my own next of kin then living and their heirs forever.

"Third.—I hereby appoint my mother executrix, and Robert Habersham, Esq., of Savannah, executor of this my last will, authorizing them to assume and exercise the necessary and lawful trust herein prescribed in regard to the custody of my said estate, and at their discretion to sell the same, or any part thereof, and to invest the proceeds of sale in any safe and good interest-yielding stock, to transfer the same to my said daughter at the time above specified, or to my mother and sister, or other heirs, at any time after my daughter's death without issue or lineal heirs then living.

"In testimony whereof, I have hereunto subscribed my name and affixed my seal, this 7th day of September, 1839."

The 3-16 of wharf lot No. 14, mentioned in the said marriage settlement, was received and receipted for by Edward Padelford, trustee, on June 12, 1848. He received the same through the hands of Robert Habersham, agent of Mrs. Margaret Telfair, administratrix of the estate of Margaret L. Telfair. The same receipt was also signed by Charles S. Arnold and Sarah Alberta Arnold. The 6-16 of wharf lot No. 14 was never received by said trustee, but the same remained in the hands of Robert Habersham, as executor of said will of Mrs. Mary E. Cobb.

There were no children of the Arnold marriage, and it was dis-solved by a divorce *a vinculo matrimonii* on January 21, 1856. In April,

1857, and after Mr. Arnold had died, Mrs. Arnold was married to the said Augustus P. Wetter. The said Edward T. Wetter was born in 1858, Conrad in 1859, Meta in 1860 and Alberta (Mrs. Gould) in 1865. Mrs. Wetter died on July 27, 1866, Conrad Wetter died in June, 1874, and Meta in 1878. Augustus P. Wetter died intestate in 1882. The demises are laid in his four children above named, and are dated August 1, 1866.

At the close of the evidence, which exhibited the state of facts above recited, the defendant moved for a non-suit, and the motion was sustained. The case comes to this court upon an exception to this judgment.

1. In passing upon the alleged error in the judgment complained of, this court must determine what rights the plaintiffs acquired by the will of Mrs. Cobb and the marriage settlement before mentioned. We will undertake first to ascertain what these rights are under the will.

Two theories as to its meaning have been proposed. It is insisted on the part of the defendant that the testatrix's purpose was to invest her daughter, Sarah Alberta, upon her attaining the age of twenty-one, with a fee in the whole property of testatrix, which fee should be determinable upon such daughter dying without issue. Assuming this construction to be proper, the defendant argues that, as she attained the prescribed age, the fee became hers subject to the condition named, and that, upon her marriage with Wetter, he, by virtue thereof, became the owner, on like condition, of the property in question. Of course, if this view is correct, the non suit was a logical necessity, Mrs. Wetter having left issue at her death. The plaintiffs, on the other hand, maintain that the effect of the will is to give a life estate in the testatrix's property to her said daughter, and a remainder to her children, and that as the mother was dead when the suit was commenced, their right to the property was then perfect.

We think the latter construction the true one. By positive enactment in this State, as well as on the soundest reasoning, the rule in construing a will is to seek diligently for the intention of the testator, regardless of technical rules, and when such intention is ascertained, to allow it full operation, provided it does not contravene any law or public policy. Code, §§ 2456, 2248.

Blackstone says, " that a devise must be most favorably expounded to pursue, if possible, the will of the devisor, who for want of advice may have omitted the legal or proper phrases. And therefore many times the law dispenses with the want of words in devises that are absolutely requisite in all other instruments." Black., Book 2, 381. Any other doctrine would plainly ignore the nature of a will and would substitute for the testator's desire as to the disposition of his property the

judgment of a court. It would be equivalent to adjudging that the testator should have a will only in semblance. It would be especially unjust to apply technical rules to an instrument manifestly drawn without reference to them. The will of Mrs. Cobb is a paper of this character.

What, then, did Mrs. Cobb intend in respect to the property given her daughter? It is agreed on all hands that the difficulty in discovering her intention grows out of the second and third items of the will. If the first stood alone, there could be no difference of opinion. In that event her daughter, on becoming twenty-one years old, would be entitled to the whole property of the testatrix, and would have in it the highest and greatest estate possible. Till she reached that age, her interest would be that of the sole beneficiary in a property held in trust for her by others. The second item, however, qualifies in a most important manner the interest conveyed by the first. At this point the mind of the testatrix looks beyond her daughter. Several views present themselves. The first, it seems to us, includes the children of the testatrix' daughter, and this is as might naturally be supposed. The daughter herself is the first and, perhaps, the chief object of her bounty, and next to her they come. They are not mentioned, however, in direct terms as beneficiaries. Nothing, indeed, is expressly said as to what effect their existence is to have on the course of the property. The language of this item is that "if my said daughter should depart this life leaving no issue or lineal heirs, that the whole of the estate herein bequeathed shall go and belong to my mother and sister, as tenants in common," etc. The contingency, and the only contingency, on which other persons—in the one case the mother and sister, and in the other the next of kin to the testatrix—can take is the death of the daughter "without issue or lineal heirs." If the daughter should die with such "issue or lineal heirs" surviving her, these other devisees named can get nothing. The inference or implication seems to us plainly to be that if there were such issue or lineal heirs left by the daughter, the property should go to them. If after the will had been read over to the testatrix any one had asked Mrs. Cobb what she intended in case there were grandchildren, can there be a doubt about what she would have answered? Would she not have responded at once, " Why, of course they are to have the property. Do you not perceive that I provide for others only in the event of Alberta's having no children?"

If the children do take, the only estate they can have consistently with the provision made for the daughter is a remainder. The construction which we place upon the will therefore is, that it invests Mrs. Wetter with a life estate and the children with an estate in remainder.

Upon Mrs. Wetter's death a right accrued to them to recover the property in question so far as covered by the will.

The view we take appears to us not only to be the natural effect of the language employed by the testatrix, but to be in accord with the interpretation usually placed upon such language by the courts. In Burton *vs.* Black this court says that "the cases which have caused such difficulty and conflict of decisions are those where the persons intended to take the property are to be ascertained not by designation in the conveyance, but by *inference*. This inference is generally associated with a limitation over, the inference itself being that those are intended to take the property who are designated to prevent its going over." 30 Ga. 640. Mr. Jarman, in discussing the doctrine of estates by implication in a will, uses this language: "In the application of this principle one chief topic of controversy has been how far a devise to any person in the event of the non-existence or on the decease of another indicates an intention to make the last named person a prior object of the testator's bounty. In such cases it is probable that the person whose non-existence is made the contingency on which the devise over is to fall into possession is placed in this position for the purpose of taking the property in the first instance; and this probability is of course greatly strengthened if the devisee is the person on whom the law in the absence of disposition would cast the property." Jarman on Wills, 465. This construction is likewise in consonance with the disposition manifested by the testatrix in reference to her estate. She evidently entertained a very earnest desire as to what should become of it. She not only provides for its disposal in one contingency, but covers what appears to her all the contingencies. Her daughter has the first share in her solicitude, but does not engross it. If she dies without surviving issue and leaves the mother and sister of testatrix alive, they are to take. If they die before the daughter, and she leaves no "issue or lineal heirs," then the estate goes to the next of kin to the testatrix.

No one can fail to perceive in this that it was a matter of profoundest concern to the testatrix who should succeed to her estate. Our interpretation of the will harmonizes with this notion, while the one insisted upon by the defendant in error is not in accord with it.

If, as it urges, the whole estate vested in the daughter at twenty-one, subject to be determined upon her failure to leave issue, and she did reach that age, by virtue of her marriage it passed immediately into her husband, and upon her dying with children surviving her became his free from all contingencies whatever. Being his thus, it must be subject to the possible perils of improvidence, bad judgment, second marriage, or whatever else on his part might prevent his children from

enjoying it. Would a woman so thoughtful and sagacious, and so so-licitous to direct the course of her property, have exposed her grand-children to such hazards?

Again, this construction gives to the estate such direction as natu-ral affection, particularly the affection of a woman, would suggest. This woman loves her own blood. Though a number of possibilities are contemplated by her as to the disposition of her estate, none of these possibilities lie outside of her own blood.

In the language of the elaborate and able brief of Mr. Cronk:

"To say that the testator, in all such cases, only names the issue for the purpose of raising a benefit to his distant relations, is opposed to the popular sense and one's natural feelings. As Chancellor Waties said, in Carr *vs.* Green, 2 McCord's Rep., pp. 92–3, 'Can it be seriously believed that this was all that the testator had in view? Would he be so provident in preserving his whole estate for his distant relations on the failure of issue, and yet leave the issue dependent on their father, who from caprice or partiality might give the whole to a wife or a fa-vorite child, or who from misfortune or waste might have nothing left to give? . . . . The testator expressly provides that the whole of his estate shall be preserved for his distant relations, if there should be no issue. Must he not then have intended that the whole should be pre-served for the issue, if there were any, who would be his own descen-dants? Both nature and reason call for this presumption, and in order to carry it into effect, we must construe the will to give an estate by necessary implication to the first taken for life only, and the remainder to the issue as purchasers.'"

The admirable opinion of the learned judge of the Eastern Circuit rests largely upon the reasoning of Mr. Justice Stephens, in Burton *vs.* Black. It is sufficient, perhaps, to say that the will in that case was different in its terms from the one now under consideration, and that as a positive authority that decision does not extend beyond the facts on which it is based. 37 Ga., 445. As Judge Adams himself remarks, "precedents are of little value in determining questions of this kind." In the 72d Ga. this court says that "Every will is a thing to itself. It is in fact not only *sui juris* but *sui generis.* Its terms are its own law, and the application of that law by construction of itself—of the statute which the testator himself enacted, to the contestants for its bounty, is the plain duty of the court." 72 Ga., 855, 856.

2. The effect of the Arnold marriage settlement is not an open question in this court. Knorr, administrator, *vs.* Raymond, September Term, 1884.

Judgment reversed.