## MYRICK *v.* HEARD.

*(Circuit Court, S. D. Georgia, E. D.* April 30, 1887.)

1. FEDERAL COURTS—STATE DECISIONS.
    Where a question involving the title to land in a state is well settled by the decision of its court of last resort, it will be followed by the courts of the United States, even though they may have understood the law otherwise.
2. SAME—CONFLICTING STATE DECISION.
    The courts of the United States will follow the latest settled adjudication. But they cannot be expected to follow oscillations in the process of settlement.
3. WILLS—CONSTRUCTION—TESTATOR'S INTENTION.
    A cardinal rule for construction of wills in Georgia is to seek diligently for the intention of the testator, regardless of technical rules, and, when such intention is ascertained, to allow its full operation, provided it does not contravene any law or public policy.
4. SAME—LIFE-ESTATE.
    In a clause of a will in these words: "To hold in trust for my niece Abigail Nelson. the daughter of my sister Elizabeth Nelson, and her heirs, and if she, the said Abigail, should die without issue living at her death, then, in default of such issue, to my sister Elizabeth Nelson, the mother of said Abigail. for life, remainder in fee-simple to my nephews Augustus, Francis, Sheldon, and Mitchell Doughtery, the sons of my brother Lemuel Doughtery, and their heirs,"—the word "heirs," as used, is a mere *descriptio personarum* of the issue of the life-tenant living at the time of her death.
5. SAME—PERPETUITIES.
    This clause does not create a perpetuity, but provides simply for the root of a new inheritance. It is tantamount to "heirs of the body," and indicates persons intended to take the estate.
6. SAME—MARITAL RIGHTS OF LIFE-TENANT'S HUSBAND.
    This clause casts the title on the plaintiff, the only child of the life-tenant living at the time of her death, and excludes the husband of the life-tenant, who claims by virtue of his marital rights.

*(Syllabus by the Court.)*

At Law. Motion to direct a verdict in an action of Ejectment.

*John M. Guerrord* and *Charles N. West,* for plaintiff.

*Dell & Wade* and *Lester & Ravenel,* for defendant.

SPEER, J. The plaintiff in ejectment, having introduced her evidence, rested, and the defendant moved the court to direct a verdict in his favor, and the question depends on the construction of the following clause in the will of Mary Ann Murray, that is to say:

"I give and bequeath," etc., "to hold in trust for my niece Abigail Nelson, the daughter of my sister Elizabeth Nelson, and her heirs, and if she, the said Abigail, should die without issue living at her death, then, in default of such issue, to my sister Elizabeth Nelson, the mother of the said Abigail, for life, remainder in fee-simple to my nephews Augustus, Francis, Sheldon, and Mitchell Doughtery, the sons of my brother Lemuel Doughtery, and their heirs."

At the death of Abigail Nelson, the plaintiff, her daughter, and the only child, was living. It is insisted by counsel for the defendant that Abigail took, under this devise, the fee, determinable upon her dying without issue living at the time of her death; and, as this contingency did

not happen, the fee at the death of Abigail vested in her husband, under whom the defendant holds. It is insisted by counsel for plaintiff that the words "heirs" and "issue" as used in the clause are synonymous; that they are words of "purchase," in the broadest sense of that term; and that the plaintiff, as the "issue" of Abigail, took the title upon the death of the latter.

I may say of the argument, as was said by Chief Justice LUMPKIN, in *Dudley* v. *Mallery*, 4 Ga. 60, of the reasonings on the same question by members of this bar whose memories are among its cherished traditions:

"It has elicited such an admirable exhibition of complex and multifarious learning by the erudite and ingenious counsel that it is not too much to say My Lord COKE himself, were he in life, might derive both pleasure and profit from it."

There have been many cases in Georgia upon this most difficult and intricate doctrine of the law, and many elsewhere. As said by Chief Justice KENT, in delivering the opinion of the court in *Executors of Moffat* v. *Strong*, 10 Johns. 12:

"The greatest difficulty that arises in stating the main point for consideration is to avoid being overwhelmed and confounded by the multitude of cases. Lord THURLOW said that he had found fifty cases up to his time, and they have multiplied exceedingly since then."

In *Burton* v. *Black*, 30 Ga. 640, Judge LINTON STEPHENS, in delivering the opinion of the court, stated:

"The cases which have caused such difficulty and conflict of decisions are those where the persons intended to take the property are to be ascertained, not by designation in the conveyance, but by inference."

There are, however, singular conflicts of authority upon language the construction of which is practically identical in the cases reported.

The counsel for the plaintiff rely with great confidence upon *Wetter* v. *Hydraulic Cotton Press Co.*, 75 Ga. 540, (decided by the Sup. Ct. of Georgia at March term, 1886.) The chief justice having been disqualified, the decision of the court was pronounced by the Hon. MARSHALL J. CLARKE, a judge of the superior court, who for that case was acting as justice of the supreme court. The clause of the will there construed was in these words: "It is my will that if my daughter should depart this life leaving no lineal heirs living at the time of her death," that the estate should go over, etc. There was a lineal heir, the grandchild of the testatrix, living at the death of the testatrix; and the court held that these words created a remainder in fee in the lineal heir, and that it did not invest the daughter, who was the first taker, with the fee determinable upon her dying without issue. The counsel for the defendant rely with equal confidence upon *Hill* v. *Alford*, 46 Ga. 247. The clause of the will there construed, Chief Justice WARNER rendering the decision, was: "Should all my children die without leaving children at the time of their death," the estate shall go over, etc. It was there insisted that the intention of the testator by this clause was to provide for his grandchildren, if in life at the time of the death of his children, the first takers, but the court declare: "There are no words in the will which will author-

ize the court to say so;" and the ruling of the circuit court, which was that the grandchildren "took an estate in remainder in fee," was reversed. This court is not able to reconcile these decisions, although it was stated in the argument that they were reconcilable. Where a question of this character is well settled by the decisions of the highest court of the state, it will be followed by the United States courts, even though they may have understood the law otherwise. *Green* v. *Neal's Lessee*, 6 Pet. 291, *U. S.* v. *Morrison*, 4 Pet. 135.

They will follow the latest settled adjudications, (*Leffingwell* v. *Warren*, 2 Black, 599;) but they cannot be expected to follow oscillations in the process of settlement, (*Gelpcke* v. *Dubuque*, 1 Wall. 175; *Green Co.* v. *Conners*, 109 U. S. 104, 3 Sup. Ct. Rep. 69.) Besides, it may well be doubted whether the supreme court of Georgia regard this question as settled.

*Central R. Co.* v. *Roach*, 70 Ga. 434, HALL, J.:

"Where a principle has been settled by a unanimous judgment of a full bench, without any observance of the conditions of section 217 of the Code, or without any reference to the first judgment, as sometimes unavoidably happens, we do not intimate an opinion as to which ruling, the first or the last, we would be obliged to follow."

Deprived, therefore, upon the consideration of this question, of that lucid and decisive declaration of legal principles which is usually found in the reports of that elevated tribunal, this court must depend upon decisions and authority elsewhere found for the construction of this will. The cardinal rule of construction of force in this state is expressed in sections 2248, 2456, Code. It is to seek diligently for the intention of the testator, regardless of technical rules; and, when such intention is ascertained, to allow its full operation, provided it does not contravene any law or public policy.

Now, what was the intention of the testatrix it will be necessary to call attention briefly to certain facts in evidence. The will was made in 1851. The chief or first object of its bounty was Abigail Nelson, the niece of the testatrix. She was the daughter of Elizabeth Nelson, and, as she then bore her maiden name, presumably she was not married at that time. She afterwards married one Williams. The bequest of almost the entire estate was to Abigail and her heirs, and, if "she should die without issue living at her death then, "in default of such issue," to her mother, Elizabeth Nelson, the sister of the testatrix, for life, remainder in fee-simple to a sister, nephews, etc. Now, in what sense were the words "heirs," "issue," and "in default of such issue," used? We have great assistance in this determination from very high authority.

In *Abbott* v. *Essex Co.*, 18 How. 215, Mr. Justice GRIER for the court says:

"It remains to consider the effect of the second clause of the will, which is in these words: It is my will that, if either of my said sons, namely, John or Jacob, should happen to die without any lawful heirs of their own, then the share of him who may first decease shall accrue to the other survivor, and his heirs. Viewing this clause free from the confusion of mind produced by the

numerous conflicting decisions of courts, we think no two courts could differ as to the clear intention of the testator. By lawful heirs of their own, he evidently means lineal heirs or issue."

See, also, the opinion of Lord MANSFIELD in *Davie* v. *Stevens*, 1 Doug. 321.

This would seem the only intelligent view which will give effect to every effective word in the clause, and this the court must do if possible.

Had the testatrix reference to any heirs who were not to be the issue of Abigail's? If so, why use the defining word "issue," and the alternative phrase, "in default of *such issue?*" Had she perceived the future husband of Abigail in the horizon of her benefaction, she would not have used the phrase "heirs," because by the law as it then stood the husband, by virtue of his marital rights, was the sole heir, no matter how many children may have been born to Abigail. The bequest was to Abigail's "heirs," and in default of such issue, then over to the sister, with remainder to the nephews, the sons of a brother; but no fair or reasonable construction of this clause can compass within it as one of the heirs of Abigail a husband of whom the testatrix had probably never heard. Such a conjecture is distinctly at variance with the entire testamentary scheme of Mrs. Murray. Had she designed a benefit for the husband, the issue of the marriage would not have been considered or mentioned, and certainly the life-estate over to her sister, with remainder in fee to her nephews, would not have been created. I hold, therefore, that the term "heirs," as used in this clause, is not used in that technical sense which would cast the estate upon the husband of Abigail, but that it is a mere *descriptio personarum* of Abigail's "issue," living at the time of her death. This will not tend to create a perpetuity, but simply the root of a new inheritance. It is tantamount to heirs of the body, and indicates the persons intended to take the estate. 4 Kent, Comm. 221. This construction will exclude the husband of Abigail, and will, in the opinion of the court, cast the title on the plaintiff, her only child living at Abigail's death.

The motion to direct a verdict for the defendant is therefore denied.