## BURTON *vs.* BLACK.

1. An estate to one generally, without expressing what estate, and then adding, that if he shall die without children, then over, is not an estate-tail, and the limitation over is valid.
2. When the direction is, that all the property which shall be found remaining at the death of the first taker, shall go over, the description of what goes over is sufficiently certain.

Complaint for Negroes, in Schley Superior Court. Tried before Judge WORRILL, at April Adjourned Term, 1860.

This was action of complaint brought by Burton against William A. Black for certain negro slaves.

The only question in this case arises upon the last will and testament of Mrs. Elizah Burton, the mother of plaintiff, and to whom the negroes sued for formerly belonged.

The substance of the bequest may be found in the opinion of the Court.

Plaintiff proved that Benjamin Burton, who is mentioned

in said will, died some time in January, 1859, and that he never had any child or children.

Plaintiff further proved, that after the death of said Benjamin Burton, and before suit brought, he demanded said negroes of defendant, which he refused to deliver, and that they were in possession of defendant.

Plaintiff then introduced and read in evidence a deed of marriage settlement between said Eliza Burton and one Charles W. Smith, her last husband, by which deed his, Smith's, marital rights were excluded, and did not vest or attach in or to any of the property of said Eliza.

Plaintiff here closed.

Defendant's counsel moved for a non-suit, or to dismiss plaintiff's suit, on the ground that the bequest contained in the last will and testament of Mrs. Eliza Burton, of said property, to Robert Burton, was void, and that an absolute, unconditional estate in fee in the same vested in Benjamin Burton.

After argument, the presiding Judge granted the motion, holding that plaintiff had no title; that the limitation over in by said will to Robert Burton was too remote; that the legal effect of the words used created a perpetuity, and that Benjamin Burton took an absolute estate in and to said property.

To which decision counsel for plaintiff excepted, and assigned for error said ruling and order.

McCay & Hawkins, Smith & Pou, for plaintiff in error.

Blandford & Crawford, B. Hill, *contra.*

*By the Court.*—Stephens, J., delivering the opinion.

1. This case turns solely upon the validity of the limitation over expressed in the 5th item of the will. Its validity is attacked on two grounds, of which the first is, that it creates an estate-tail, which, by our Act of 1821, is converted into a *fee-simple* in the first taker, to the destruction of the limitation over. The question, whether or not an estate-tail is created, is always resolvable into two others, of which one is, what persons are intended to take the property? and the

other is, do these persons constitute a class having succession from generation to generation, down to the end of the blood ? The cases which have caused such difficulty and conflict of decisions, are those where the persons intended to take the property are to be ascertained, not by designation in the conveyance, but by *inference.* This inference is generally associated with a limitation over, the inference itself being, that those are intended to take the property who are designated to prevent its going over. The inference is a sound one, only when carefully applied and put under certain restrictions. There should be great care in adhering strictly to the description of the persons who are to prevent the property from going over; for whatever persons these may be, the only just inference is, that those *same persons,* by the *same description,* are intended to take. If property is given to A for life, and if he shall die without issue, then over to B, the issue of A are the persons whose existence is to prevent the property from going over to B; and the just inference is, that the "issue," without further description, are intended to take it. This, therefore, is equivalent to a gift to A for life, remainder to his issue, if any, and if none, then over to B; or under the rule in *Shelley's* case, a gift to *A and his issue,* which is an express entail, issue being a class which has succession from generation to generation, till the lineal blood is exhausted. Here, "issue" prevents the property from going over, and "issue," by the same description, no more no less, are inferred to have been intended to take it. But if property is given to A for life, and if he shall die "without issue living at his death," then over to B, the issue of A "living at his death," are the persons who are to prevent the property from going over, and the just inference is, that only such issue are intended to take it as shall be living at A's death. Here, there is no estate-tail, for "issue living at the death of A," cannot embrace persons in future generations. These two extreme cases clearly illustrate the *principle* on which the intention to create an estate-tail is reached by implication, or, more properly, by inference. To apply it to the case before us: The 4th item of the will gives the property to Benjamin, and then the 5th declares that it shall go over to Robert, if Benjamin shall die "without children." Now, if this were a case (as I shall presently show it is not) where it is allowable to draw an inference as

to who is intended to take the property, from a designation of those who are to prevent it from going over, the utmost inference would be, that at the death of Benjamin, his "children" are to take, if any, and if not, then Robert is to take. That is to say, it would be an estate to Benjamin for life, remainder to his children, if any, but if none, then to Robert. Can this possibly be made an estate-tail? Benjamin, and after him, his children are the persons, if any such there be, who constitute a class having succession from generation to generation, until the blood is exhausted. The term "children" does not describe any such class. In its proper sense, it includes only the next generation to Benjamin, and to make it include more, there must be something in the will (as there is not) to show that it is used in a broader sense. There are many books which say that the term must be also extended so as to include others, when there are no children proper to whom it can apply; but Mr. Jarman denies the principle, and denies that it is sustained by any well adjudicated case. For my own part, I think Mr. Jarman is right; but even if the principle be conceded, it never extends the term "children" beyond such representatives of children as are in life when the time arrives for children to take; that is to say, "children," in this case, can include only children proper, or, in default of these, such representatives of children as were in life at the death of Benjamin. The persons who take under the description of children, in the largest possible sense of the term, must all be in life at the death of Benjamin. The conveyance exhausts itself on a single generation, and creates nothing which bears a resemblance to an estate-tail. This view would suffice for this point in this case, but there is another which is applicable to the point, and applicable also to the case of *Tennille vs. Ford,* decided during the present Term. I shall here apply it to both cases, because I can do so in one opinion more briefly than in two. The principle of ascertaining, by *inference,* the persons who are intended to take the property, is not applicable to either of these two cases, because in both, those persons are designated. An obvious restriction upon the principle of reasoning by inference is, that resort to it shall be had only in the absence of expressed intention. The case of *Gov. Troup's will,* decided at the last Savannah Term, will clearly illustrate this restriction, and the importance of it in arriving at

the true intention of testators.    That will makes a gift to George M. Troup, jr., and his.heirs—a *fee simple*—with the exception, that if he shall die " without lineal descendants, " it shall then go over.    It was contended in that case, that as the " lineal descendants " were to prevent the property from going over, they were intended to take it, and that that intention made it an estate-tail, lineal descendants constituting a class which has succession from generation to generation. Such an inference is opposed to the clear words of the will, for the will makes full provision for two events, one or the other of which was obliged to happen, and its provisions are therefore perfectly exhaustive of all contingencies, leaving no room for inference.    One of these two events is, the first taker's dying *without* lineal descendants, and the other is, his dying *with* them.    These two exhaust the possibilities, and there is full provision for each of them.    The estate of the first taker is to be a *fee-simple*, excluding lineal descendants and everybody else, filling the whole field, and leaving no room for anybody but the first taker, with his absolute and perfect dominion over the property during life, and after death, *unless* he shall die *without* lineal descendants.    If he dies *without* lineal descendants, the property is to go over, but if he dies *with* them, the property is to be in the situation just described—is to constitute a *fee-simple* estate in the first taker, to the exclusion of everybody else.    The will disposes of the whole estate in all possible contingencies, by *express words*, excluding all occasion or place for inference. Sometimes an inference may be so strong as to overcome express words, as when " or " is construed " and," under the strong inference that a testator would not exclude the issue of his donee from all benefit of the gift, when there is no reason to do so; but there is no such inference in this case or in those like it.    It is not a true statement of the case to say that the lineal descendants are to prevent the estate from going over, the more accurate statement is, that their absence is to terminate the estate of their ancestor : and in this, there is good reason and perfect conformity with the general conduct of mankind.    The object of the testator was to provide directly for two persons only—his own son, who is the first taker, *leaving him to provide just as he might please for his own issue*, if he should have any, and the remainderman over, whom he was not willing to trust in the hands of his son.

The issue of his son no doubt constituted a strong motive in shaping the form of the gift, but he provided for them just as five parents out of six provide for the issue of their *sons*, and that is, by giving property to their *father*, leaving them to take their chances as his heirs or legatees. The testator did not desire to terminate the estate of his son, neither during his life nor at his death, if he should die leaving those who would have natural claims on him, because he could safely trust his son with his own children; but there was the remainderman whom he was not willing to trust in the hands of his son, and for whom, therefore, he made provision himself, in the event that the son should not leave those for whom he would be under natural obligation to provide. *Gov. Troup's will* creates a *fee-simple* in his son, determinable upon his dying without lineal descendants; and he having died without such descendants, the estate terminated and went over under the limitation. So, in this case, the 4th item of the will gives the property to Benjamin Burton, the son of the testatrix, and as no less estate than a *fee-simple* is expressed, *that item* creates a *fee-simple* in Benjamin. This rule of construction, which makes every estate a *fee-simple*, unless a smaller one is expressed, is derived from that very Act of 1821, which is invoked to defeat this limitation over. True, the Act converts into unconditional *fee-simple* estates, all estates expressed in such terms as will pass an estate-tail in real property by the Statute of Westminster Second. True, also, our Courts have held that estates-tail by inference or implication are included, as well as those within the letter of the Statute of Westminster. True, yet again, the English Courts, in cases relating to real estate, would always infer that an estate-tail was meant, and not a *fee-simple*, determinable upon condition, unless the estate to the first taker was expressed to him and *his heirs*. From all this, it might be argued that the Act of 1821 preserves the same distinction between an estate to one generally, without expressing what estate, and an estate to one and *his heirs*, so far as the distinction can affect *estates-tail*. I cannot think so. The English Courts, in arriving at estates-tail by implication or inference, always proceeded on the principle of being guided by the *intention* of the grantor. They applied the English rules of construction for that purpose, and one of these was, that an estate in real property to one generally, gave an es-

tate for *life* only. Now our Act of 1821 not only converts estates-tail into *fee-simples,* but it also enacts a *new rule* of construction, introducing it with a recital that the *intention* of the parties to conveyances is often *defeated,* and great injustice done by the rules of construction then prevailing. That new rule is, that an estate to one generally shall be held a *fee-simple.* I cannot doubt that it intended to subject the English rules of construction to the modifying operation of this new rule, in all cases, as well where the question should be estate-tail or not, as in all other matters wherein the decision depended on the *intention* of parties. Under the English rule, an estate to one and his heirs is a *fee-simple.* Under our new rule, an estate to one generally, is a *fee-simple.* Under the English rule, their *fee-simple* is not cut down to a *fee-tail,* by attaching to it a condition that it shall go over if the first taker dies without issue; it remains a *fee-simple,* but is determinable on the event named. Now, shall *our fee-simple* be cut down by attaching to it the very same condition? To hold so, is to reverse the intention of our Act, for it was intended to *enlarge* estates; but this construction of it makes it *restrict* them. I must think that whenever a *fee-simple* is first conveyed, whether conveyed in such terms as the English rules requires for the purpose, or in such as our Statute has made sufficient for the purpose, it will not be cut down into any smaller estate, by attaching to it a condition which would not have that effect under the English rule. Our law makes a *fee-simple* more easy of creation, and it cannot consistently make it also more easily degraded from its rank. If the bequest to Benjamin in this 4th item were expressed to him and his heirs, it would not create a *fee-simple* more effectually under our law than it now does by being expressed to him, and I think the only effect of the 5th item is to attach a condition to that *fee-simple* by declaring that it shall terminate and go over, if the first taker dies "without children." The children are not intended to take in any event, except to take their chances as heirs or legatees of their father. The estate is to be just what the fourth item leaves it, a *fee-simple* in the first taker, unless he dies *without* children. This view is equally applicable to the case of *Tennille vs. Ford.* In both cases the estate is a *fee-simple,* determinable upon condtion, and in this case the event having happened on which it was to determine, it must go over under the limitation.

Burton *vs.* Black.

2. The other ground of attack on the validity of this limitation is, that the description of the things which are to go over, is too vague and uncertain to be carried out. The direction is, that all of the "property which shall be found remaining at the death of Benjamin," shall go over to Robert. It was said that this meant only such property as should be found remaining in Benjamin's *possession* after the exercise of his rights over it, including a power of disposition. If such were the meaning of the words, it would certainly be void, as amounting to nothing at all; but we do not think this is the meaning. There is no power of disposition conferred on Benjamin, and the property which is to go over, is not restricted to that which may be found remaining in his *possession*, but it includes all which shall be found remaining *anywhere*. We think these terms are the fair equivalent of *remainder*, which, in common language, would include all of the estate that had not been given to Benjamin, though the term would not be technically applicable to a fee taking effect after the determination of a prior fee. We think this limitation is good, and that the plaintiff below was entitled to recover.

Judgment reversed.