[S. F. Nos. 5087 and 5088. In Bank.—March 28, 1910.]

In the Matter of the Estate of FRANCIS BLAKE, Deceased.

In the Matter of Trust for ETHEL POMROY SOULE (formerly Ethel Pomroy) created by and under the Will of Francis Blake, Deceased.

TRUST UNDER WILL—JUDICIAL CONSTRUCTION OF WILL—PARTIAL INTESTACY—CONCLUSION OF LAW—HEIRS NOT PROTECTED BY FINDINGS.— Where the court was called upon judicially to construe a will upon the settlement of a trust created thereunder, and construed it as involving a partial intestacy, under a devise to a granddaughter who died leaving issue, before she had become entitled to any distribution of the *corpus* of the estate, such construction of the will involves pure conclusions of law, and heirs who had received their full share of the *corpus* of the estate willed to them, and an additional share by reason of the partial intestacy so declared, are not protected on appeal merely on the ground of a finding of facts in their favor not assailed in a bill of exceptions.

ID.—FINDINGS OF FACT INEFFECTIVE.—What seems to be findings of fact by the court can have no effect as such, since no question of fact was involved or tried; but such apparent findings are in their nature mere legal conclusions declared upon the face of the will, which was before the court for construction of its terms.

ID.—UNCONTESTED SETTLEMENT OF TRUST ACCOUNT—ABSOLUTE PAYMENT TO GRANDDAUGHTER—MATTER NOT ADJUDICATED.—The uncontested settlement of a trust account including an improper absolute payment from the *corpus* of the estate to a granddaughter, concludes nothing as *res adjudicata* beyond the matter of such payment. It involves no adjudication that the devise to the granddaughter was vested; nor could it operate as a bar to any subsequent proceeding between other parties affecting other and distinct property.

ID.—JUDGMENT IN PROCEEDING IN REM—RES ADJUDICATA.—A judgment in a proceeding *in rem*, where there has been no contest or litigation, is *res adjudicata* with respect to the matter or *res* actually involved in the proceeding, and as to any fact which affected the particular matter or *res* involved in it; and this is as far as it operates.

ID.—GENERAL DOCTRINE OF RES ADJUDICATA—MATTER ACTUALLY LITI-
GATED—PROCEEDING NOT CONCLUDED BY ACCOUNT.—In order to suc-
cessfully invoke the doctrine of *res adjudicata,* it must be shown that
in the former proceeding the issue was not merely involved, but that
it was in fact, actually litigated and decided. Under this rule the
judgment settling the account is no bar to this subsequent proceed-
ing by remainderman and beneficiaries regarding property not liti-
gated therein.

ID.—TECHNICAL RULES AS TO CONSTRUCTION OF REMAINDERS.—Technical
rules of construction of remainders have no universal application,
and they are at most mere subordinate rules to be applied only in
the absence of all other indication in the will to the contrary, in
support of the intention of the testator to create a vested remainder.

ID.—CARDINAL RULE IN CONSTRUCTION OF WILLS—INTENTION OF TESTA-
TOR—SUBORDINATE PRESUMPTIONS.—The cardinal rule in the inter-
pretation of a will is that it is to be construed according to the in-
tention of the testator as expressed in the language of the will, to
be taken according to its ordinary meaning. The presumptions
against intestacy, and in favor of the vesting of testamentary de-
vises, are like the other auxiliary rules of construction, subordinate
to such cardinal rule.

ID.—GENERAL RULE AS TO VESTED AND CONTINGENT REMAINDER.—The
general rule is that where a legacy or devise is given to a person to
be paid at a future time, it vests immediately. When, however, it
is not given until a future time it is contingent, and does not vest
until that time occurs, and if it does not occur in the lifetime of the
legatee or devisee, it never vests.

ID.—WILL CREATING CONTINGENT ESTATE.—Where the will provides,
"and as each of my daughters and granddaughter arrives at the age
of thirty years she shall have the right to demand and receive one
third of the rest and residue of my said estate as her distributive
share thereof, and to have and hold the same to her and her heirs
forever," and creates a trust to pay the net income to them "until
they shall respectively attain the age of thirty years," the gift of
possession of anything but the income is future and contingent on
the beneficiary attaining the age of thirty years, and the title implied
for said future gift is likewise future and contingent, upon attain-
ing that age, there being nothing in the will to indicate the vesting
of title at the testator's death.

ID.—FUTURE TITLE EXPRESSED IN HABENDUM CLAUSE.—The future gift
of title is clearly .expressed in the *habendum* clause, "to have and to
hold the same to her heirs and assigns forever." The purpose of a
*habendum* clause is to limit, define, and make clear the estate granted
or conveyed. It has a technical meaning, and applies, as used here,
to the passage of title in fee. As the only words in the will under
which title can pass, are those giving the right "to demand and
receive," it appears from the use of. the *habendum* clause by the
testator expressive of a title in fee, that it was such title which the

beneficiaries had the right to "demand and receive" as they attained the prescribed age.

ID.—HABENDUM CLAUSE NOT ESSENTIAL TO TITLE—USE SUFFICIENT TO SHOW INTENTION.—Although a *habendum* clause is not essential in order to pass title, yet it is sufficient that it may be used, and when used, it must be considered as expressive of intention, especially when used in a will purposely to express the testator's intention to pass a future title, to beneficiaries who attain a required age.

ID.—CONTINGENT ESTATE SHOWN BY DEVISE OVER.—In this state the rule is settled that a contingent remainder is clearly shown by a devise over, and the devise over to surviving beneficiaries, in case of death of either of them without issue, before receiving the distributive share, clearly shows the intention to create a contingent estate.

ID.—USE OF WORD "AS."—While the word "as" may not be directly conditional, still it imports contingency and is generally so construed. It is sufficient, notwithstanding the use of that word, that the intention is clearly disclosed by the will itself, that the beneficiaries are to "demand and receive" nothing until they reach the age of thirty; and that futurity is annexed as of the very substance of the gift.

ID.—COMMON LAW PRESUMPTION—GIFT OF INTERIM INCOME—VESTED ESTATE.—The common-law rule that from a gift of *interim* income, a vested estate in the property which is the subject of the income is presumed to have been intended by the testator, is at best but a rule of presumption, to be indulged only when there is no other language employed by the testator showing a contrary intention. Where both futurity of title and possession are clearly expressed in the will, there is no room for presumption.

ID.—BEQUEST BY IMPLICATION TO ISSUE—DEVISE OVER UPON DEATH "WITHOUT ISSUE"—OTHER IMPLICATIONS.—A bequest by implication to issue may be supported by a devise over only in the event of death "without issue," especially when supported by other implications from the language of the will, to sustain such bequest by implication.

ID.—BEQUESTS BY IMPLICATION IN GENERAL.—Bequests by implication have from remote times been sustained when no direct language in a will is found to support them, but where from informal language used such reasonable construction can be placed on it as implies an intention to make a bequest. Such bequests cannot be implied merely because the testator has omitted something which should have been provided for; but when he has used language which can reasonably be interpreted as a bequest by implication it should be so construed.

ID.—BEQUEST BY IMPLICATION TO SURVIVING CHILD FAVORED — ABSURDITY TO BE AVOIDED.—In view of the devise over, it seems absurd to say that while the devise over cannot take effect except in case of death "without issue," yet if the contingent devisee leave issue the devise over shall be defeated without benefit to parent or child. To defeat such absurd and purposeless effect, courts will lay hold of

slight circumstances to raise a gift or estate by implication in favor of a surviving child.

ID.—PRESUMPTION AGAINST INTESTACY.—The presumption must be indulged that the testator intended to dispose of his entire estate, and if possible, its provisions must be construed to prevent intestacy. A devise or bequest by proper implication, in favor of surviving children, may defeat such intestacy.

ID.—INTENTION OF TESTATOR—DEVISES BY NECESSARY IMPLICATION.— While the intention of the testator is to be reached from what he has said, this includes not only a determination of what he meant by the explicit use of language, but also the necessary implication arising from the language he has employed. This necessary implication, when employed in raising a devise thereby, is called necessary because the court finds it so to answer the intention of the devisor.

ID.—STRONG PROBABLE IMPLICATION OF DEVISE SUFFICIENT—EXTENSION OF RULE.—A strong probable implication of a devise arising from the will is sufficient; and the tendency of modern cases is rather to extend than narrow the rule of raising devises by implication.

ID.—CIRCUMSTANCES ADDING TO IMPLICATION FROM DEVISE OVER "WITHOUT ISSUE."—Other circumstances than the form of devise over upon death "without issue," appear from the will indicative of intent to protect the issue of. beneficiaries, by a provision preventing the lapse of legacies by providing that if any of the legatees should die before his death the legacies should go to their lineal descendants, and his presumed intention to benefit his own lineal descendants by preventing a devise over with issue and to give to such issue the same share which their mother would have had had she attained the specified age, rather than such share should go to his estate and cause inequality and inequity.

ID.—NATURAL SOLICITUDE FOR ISSUE OF DECEASED CHILD.—INFERENCE FROM MENTION OF ISSUE.—It is to be assumed that the testator would have the same natural solicitude for the issue of a deceased child that he would have for the child herself; and that, while contemplating the possibility of death with issue, he provided in such case that the share of the deceased beneficiary should not go over. Having thus the possibility of issue in his mind, it seems that the only reasonable inference from the mention of issue at all, is that the issue were to take the share which their mother otherwise would have taken.

ID.—CONSTRUCTION OF DEVISE OVER "WITHOUT ISSUE."—Under the weight of authority under a devise over "without issue," the word "issue," where it exists, is a word of purchase, and implies a devise to the issue who thereby take as donees or purchasers under the will.

APPEAL from a decree of the Superior Court of Alameda County distributing the estate of a deceased person. Wm. H. Waste, Judge.

The facts are stated in the opinion of the court.

Edward C. Sessions, Jr., administrator of the estate of Ethel Pomroy Soule, deceased, appearing *in pro. per.*, Appellant in S. F. No. 5,087.

Samuel Poorman, Jr., for Beach Carter Soule, Jr., and Everett Pomroy Soule, minors, Appellants in S. F. No. 5,088.

Charles S. Wheeler and J. F. Bowie, for Alice S. Blake, as trustee, and Alice S. Blake, individually, and Helen F. Witcher, Respondents in both appeals.

LORIGAN, J.—Francis Blake died in 1888, leaving his widow, Mary C. Blake, two daughters, Alice S. Blake and Helen F. Witcher, and a granddaughter, Ethel Pomroy, then nine years of age, a child of a deceased daughter, as his heirs at law. He left a large estate and a holographic will, by which having made certain bequests, he then devised the rest and residue of his estate to trustees in trust, first, to pay a large number of bequests, and then:—

"After the payments of the bequests enumerated in article III, I direct my said executrix, executors and trustees to convert the rest and residue of my personal estate, if any there be, into money, and to invest the same in improved real property, and to hold all the rest and residue of my estate and pay over the net income therefrom in equal proportions quarterly to my said daughters, Alice S. Blake and Nellie F. Witcher, and my granddaughter, Ethel Pomroy, until they shall respectively arrive at the age of thirty years, and as each of my said daughters and granddaughter arrives at the age of thirty years she shall have the right to demand and receive one third of the rest and residue of my said estate as her distributive share thereof; and to have and hold the same to her and her heirs forever, *and if either of my said daughters or granddaughter shall die without issue and before she receives her distributive share of my estate, it is my desire that her share of my said estate shall go to the surviving daughter, daughters or granddaughter as the case may be, share and share alike.*" The portion of the trust we have italicized above was omitted from the decree of distribution which in due course was made

in the estate. That decree, after setting forth the trust clause, omitting the italicized portion, then distributed the residue of the estate (the beneficiary Alice S. Blake having attained the age of thirty years) as follows:—

"To the said Mary C. Blake (the widow) in her individual right an undivided one half thereof, being her half of the community property. To the said Alice S. Blake in her own individual right an undivided one sixth thereof. To the said Mary C. Blake, James Moffitt and Charles L. Taylor, as trustees under the said last will and testament, and upon the trusts therein mentioned, in trust for the said Nellie F. Witcher under and in accordance with the provisions of the said last will and testament, an undivided one sixth thereof. To the said Mary C. Blake, James Moffitt and Charles L. Taylor, as trustees under the said last will and testament, and upon the trusts therein mentioned, in trust for the said Ethel Pomroy under, and in accordance with the provisions of the said last will and testament, an undivided one sixth thereof."

Subsequent to the decree of distribution Helen F. Witcher attained the age of thirty years, and the property distributed to the trustees in trust for her was turned over by them to her. Thereafter the beneficiary, Ethel Pomroy, married Beach C. Soule, and two children were born to them. In 1905, she died intestate at the age of twenty-seven years, leaving as her sole heirs at law her husband and their two minor children. After her death, Alice S. Blake, who had become sole trustee of the trust, filed in the superior court an account of her administration of the trust, and a petition for distribution of the trust property, stating in the latter that she was in doubt as to whom the *corpus* of the trust property should be distributed, and asked the court to judicially determine the question. Answers to the petition were filed respectively by the guardian of the minor children of Ethel Pomroy Soule, deceased, and by the administrator of her estate, in which they joined with the trustee in a request for such judicial determination. Answers were also filed by said Alice S. Blake and Helen F. Witcher, asserting that they were each individually entitled to one third of the *corpus* of the trust property.

On the hearing the court judicially construed the trust provisions and found and decreed that Francis Blake failed to provide in his will, creating the trust, for the disposition of the

*corpus* of the trust property upon the termination of the trust, in the event of the death of Ethel Pomroy Soule under the age of thirty years, and the said event had occurred, and hence that the said *corpus* of the trust property "is vested . . . one third . . . in Alice S. Blake, individually; one third . . . in Helen F. Witcher. . . . individually; and one third . . . in the heirs at law of Ethel Pomroy Soule, deceased," as the heirs at law of said Francis Blake, deceased. A decree in accordance with this construction of the trust provisions was made.

While separate appeals are taken by the minor children and the administrator of the estate of Mrs. Soule from those portions of the decree immediately referred to, and taken upon separate records, they involve the construction of the same trust provisions. They are presented here—except as to one point—in identically the same briefs, and the questions presented on both appeals can be readily and consistently disposed of in the same opinion.

The only question on this appeal calling for serious consideration is the legal soundness of the construction given by the superior court to the trust provisions contained in the will and embodied in the decree of distribution in favor of the beneficiary Ethel Pomroy.

On the part of respondents—Alice S. Blake and Mrs. Helen F. Witcher—the contention below was, and here is, that under the will of Francis Blake, Ethel Pomroy was given a contingent remainder only in the *corpus* of the trust property; that neither the title nor right of possession to said *corpus* was to vest in her until she reached the age of thirty years, and that as she never attained that age the remainder never vested; that no provision was made in the will for the disposition of the *corpus* of the trust property in the event which actually occurred,—namely, the death of the beneficiary "with issue and before she received her distributive share" of the estate of testator, and, hence, the testator died intestate as to such property and it descended and should be distributed to his heirs at law. This was the construction given to the provisions of the will by the trial court and the accuracy of which is questioned by the appellants.

As far as the appellant—the administrator of the estate of Ethel Pomroy Soule—is concerned, it is insisted that under the will and decree devising and distributing the trust prop-

erty to the trustees there was vested immediately in Ethel Pomroy on the death of the testator a remainder in fee in said property (possession only being deferred) defeasible only upon a condition subsequent,—namely, her death "without issue and before she received her distributive share" (attaining the age of thirty years), the happening of which has now become impossible, and that on her death the *corpus* of the trust property passed to her heirs in fee simple.

On behalf of the surviving minor children it is insisted that even if the contingency by which their mother was to take the *corpus* of the estate—the attainment of the age of thirty years —did not happen and the fee of the property therefore never vested in her, still the testator did not fail to dispose of the trust property, but, on the contrary, they insist that the trust clause providing for a devise over on the death of their mother *"without issue* and before she received her distributive share" was a devise by implication to them of such *corpus* as her issue; that even if the devise failed to vest in fee in their mother, they took the property as donees or purchasers under the will itself as a devise in their favor. In the event, however, that their contention in this respect be by the court deemed untenable, they then stand with the administrator, and insist that the devise to their mother was of a vested remainder defeasible only on condition subsequent, the happening of which has now become impossible.

Some preliminary matters require attention before approaching the real merits of the appeals, though they will be considered but briefly.

It will be observed that the clause in the will as to the devise over was omitted in the trust provisions set forth in the decree of distribution. In our opinion, however, such apt reference is made to the will in the decree as to embody the entire will in it so that this omission is of no consequence. In fact, we do not understand any point to be made on the omission, all parties relying on the devise over in support of their particular positions as to the construction to be placed upon the entire trust provisions.

It is, however, contended by respondents that the court found as a fact that Alice Blake and Mrs. Witcher were respectively vested with a one-third interest in the *corpus* of the trust property, and they assert that as there is no specifica-

tion in the bill of exceptions attacking the sufficiency of this finding and as it supports the decree, the latter must for that reason be affirmed. We do not, however, consider this a finding of fact, but rather a conclusion of law. It is true that it is found among the findings of fact—19 and 20—but is evidently misplaced. While the court made findings of fact, there was really no question of fact at issue under the pleadings and none was tried. What are embodied in the findings of the court are simply matters appearing in the decree of distribution, or in the petition of the trustee for a judicial construction of the trust provisions and of the truth of which there was no question made. The only question that was presented to the court—purely a legal question—was, What was the proper construction of the terms of the trust? This was determined by the court from the face of the will and decree, and its conclusion that the testator, Francis Blake, failed to "make any disposition of the *corpus* of the trust property upon the termination of the trust in the event of the death of Ethel Pomroy Soule under the age of thirty years" was the basis for the further immediate conclusion of law that one third of the *corpus* was vested respectively in Alice Blake, Mrs. Witcher, and the heirs of Mrs. Soule. Though these are inserted among the findings of fact, they are really conclusions of law which the court made from the sole matter which was before it for consideration,—namely, the construction of the trust provisions of the will.

It is insisted by appellants that it was *res adjudicata* in the superior court prior to the inauguration of this proceeding for the construction of the trust provisions that Ethel Pomroy Soule took a vested estate in remainder in the *corpus* of the trust property. This claim is predicated upon the settlement of an account of a former trustee of the trust in which the court approved the payment by him to Mrs. Soule, absolutely, of certain moneys derived from the sale of a portion of the *corpus* of the trust property, the argument being that this approval of such account necessarily involved a determination by the court that the devise made of the *corpus* of the trust property was a vested one.

We do not think, however, that the principle of *res adjudicata* has any application here. There was no actual controversy over the settlement of the account referred to. Proceed-

ings towards its settlement were under section 1699 of the Code of Civil Procedure and jurisdiction was acquired by posting of notice of the hearing. While the decree settling the account would operate as a bar to any subsequent attempt to recover that portion of the proceeds of the *corpus* of the trust property, payment of which to the beneficiary was approved by the court, it is only to the extent that the payment was sanctioned that the decree can be deemed *res adjudicata*. Evidently the payment to her was improperly made and approved, under any view of the trust provisions. But the decree did not operate as a bar to the remaindermen or beneficiaries to maintain this proceeding affecting other and different property. The rule of the authorities is that a judgment in a proceeding *in rem* where there has been no contest or litigation is *res adjudicata* with respect to the matter or *res* actually involved in the proceeding and is *res adjudicata* as to any fact which affected the particular matter or *res* involved in it and this is as far as it operates. The judgment cannot be invoked as *res adjudicata* in a subsequent proceeding which affects other property. (*Cromwell* v. *County of Sacramento,* 94 U. S. 351; *Overby* v. *Gordon,* 177 U. S. 214, [20 Sup. Ct. 603]; 1 Freeman on Judgments, sec. 253.)

Mr. Freeman in discussing the effect of a judgment in one proceeding when invoked as *res judicata* in another proceeding involving a different though similar subject-matter says: "In order to successfully invoke this rule (*res judicata*) it must be shown that in the former action the issue was in fact litigated and decided. It is not sufficient that it was there so involved that it might have been litigated. . . . In a subsequent action involving a different subject-matter the former adjudication cannot be relied on unless it appears, not that the issue presented was presented and ought to have been litigated in the prior action, but further that it was litigated and decided, as well as involved."

Under this rule the judgment settling the account in the proceeding, had without appearance or contest on their part, did not operate as a bar to the remaindermen or beneficiaries to maintain this proceeding.

This brings us to the consideration of the appeal on its merits—the nature of the remainder devised to Ethel Pomroy —whether it is to be considered as a contingent or vested re-

mainder, and if the former, was there still a devise to the issue of the beneficiary by implication?

Counsel on both sides in support of their respective positions have brought to their aid much of the abstruse learning which has been devoted to the subject of remainders. There is no subject in the law to which more refinement of learning has been applied, nor one where, particularly in ascertaining whether a remainder is a contingent or vested one, more nice, technical, and shadowy rules of construction have been formulated. Counsel for appellants more particularly invoke the aid of these rules, upon the theory that the language of the will is so uncertain as to the nature of the remainder devised as to make them applicable to the proper determination of the intent of the testator in that respect. As to these rules, however, it may be said that there are none of them which may be taken as an unvarying standard by which the meaning or intent of all testamentary devises in remainder may be construed. They have not been harmoniously applied in jurisdictions where they obtain, and whether they are applicable at all must depend upon the particular provisions of each will which is under consideration. They are simply subordinate rules of construction which are applied only in the absence of all other indications in the will to the contrary and in support of an intention on the part of the testator to create a vested remainder.

While appreciating the earnestness with which counsel for appellants insist that the language of the will is so indefinite in its terms respecting the devise to the beneficiaries as to make these rules applicable in ascertaining the intent of the testator regarding it, we are not inclined to agree with him that there is any such indefiniteness. On the contrary, it appears to us quite apparent from a consideration of the trust provisions that the testator plainly and definitely fixed the time when the *corpus* of the trust property should vest, both in title and in possession, in the beneficiaries, and hence there is no necessity of applying any technical or arbitrary rules of construction in aid of discovering that intent.

The cardinal rule in the interpretation of a will is that "it is to be construed according to the intention of the testator." (Civ. Code, sec. 1317.) As said in the *Estate of Young*, 123 Cal. 337, [55 Pac. 1011], "the purpose of construc-

tion as applied to wills is unquestionably to arrive if possible at the intention of the testator, but the intention to be sought for is not that which existed in the mind of the testator but that which is expressed in the language of the will." It is not the business of the court to say, in examining the terms of a will, what the testator intended, but what is the meaning to be given to the language which he used. Where the terms of a will are free from ambiguity, the language used must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained thereby. It is true that presumptions are to be indulged in which will prevent intestacy (*Le Breton* v. *Cook*, 107 Cal. 410, [40 Pac. 552],) and that testamentary devises are presumed to vest at the death of the testator (Civ. Code, sec. 1341), but these presumptions, like the auxiliary rules of construction relied on by appellants, are subordinate to the cardinal rule just stated.

Now, coming to a consideration of the terms of the trust itself, we think that the language of the testator, given its legal import, clearly shows that only a contingent remainder was devised to Ethel Pomroy and that as far as that question is concerned the trial court properly so held.

There can be no question as to the rule relative to contingent and vested remainders and the difference between them. The difficulties which have filled the books with dissertations on the subject have arisen in an endeavor to determine from indefinite terms of devise to which class the remainder belongs. The general rule is that where the legacy or devise is given to a person to be paid at a future time, it vests immediately. When, however, it is not given until a future time it is contingent and does not vest until that time occurs. As said in the note to *Goebel* v. *Wolf*, 113 N. Y. 405, [10 Am. St. Rep. 470, 21 N. E. 388], quoted approvingly by this court in *In re Rogers*, 94 Cal. 526, 530, [29 Pac. 962]: "The leading inquiry upon which the question of vesting or not vesting turns is, whether the gift is immediate, and the time of payment or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving of age, or surviving some other person, or the like. . . . According to the prevailing doctrine, a postponement of the time of payment will not of itself make a legacy contingent unless it be annexed to the substance of the gift; or, as it is sometimes put, unless it

be upon an event of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened. Thus, where the legacy is given, payable or to be paid when the legatee attains the age of twenty-one years, the legacy vests immediately upon the death of the testator. It is a present gift, the time of payment only being postponed; but where the time is annexed, not to the payment only, but to the gift itself—as when the legacy is given to the legatee at twenty-one, or 'if' or 'when' he attains the age of twenty-one— the legacy does not vest until the legatee attains that age. His attaining the age specified is a condition precedent; and if the condition be not fulfilled the legacy never vests."

Examining the trust provisions of the will under this clear distinction between vested and contingent remainders, and giving to the language used by the testator its proper legal import, we perceive no room for question but that the attainment of the age of thirty years by the beneficiary, Ethel Pomroy, was made a condition precedent to the vesting of the *corpus* of the trust property in her, both in title and possession, and, hence, the devise was of a contingent remainder.

This conclusion reasonably follows, whether we look at the provisions of the trust separately or view them collectively. The testator had devised the legal title in the trust property to his trustees and in the first portion of the trust clause, as far as the beneficiaries, including Ethel Pomroy, are concerned, provided only for the payment to them of the net income of the estate in equal proportions "until they shall respectively arrive at the age of thirty years." The meaning of this provision is plain. The trustees simply took the legal title to the trust property to the extent that it was necessary for the fulfillment of their trust duties. There is nothing in it whereby any title was passed to the beneficiaries. An express trust to be exercised for the purpose of conveying title to the beneficiaries would have been void (*Estate of Fair,* 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1008]; *Estate of Dunphy,* 147 Cal. 95, [81 Pac. 315]), and an implied trust would have been equally illegal, as what the testator could not do directly he could not do indirectly or effect by implication, so that unless the other provisions of the will give it, it is quite apparent that none of the beneficiaries would have taken any interest in the *corpus* of the trust property. Now the

only language in the will which can be insisted upon as giving
them any interest in the trust property is found immediately
following the provision as to the payment of the *interim* in-
come,—namely, "and as each of my said daughters and grand-
daughter arrives at the age of thirty years she shall have the
right to demand and receive one third of the rest and residue of
my said estate as her distributive share thereof, to have and to
hold the same to her and her heirs forever." This is the only
clause in the will wherein the testator attempted to make a gift
of the *corpus* of the trust property to the beneficiaries, and the
gift springs from the right given "to demand and receive" one
third of the residue "as each arrives at the age of thirty
years." Reading this entire provision, aside from any arti-
ficial rules of construction, we think it is clear that to what-
ever the right "to demand and receive" applied, whether to
the title or possession of the *corpus* of the trust property, it
was subject to a condition precedent that before the bene-
ficiaries would have the right "to demand and receive" any-
thing, each must have attained the age of thirty years. While
it is insisted by appellants that this right "to demand and
receive" applied only to the possession, we do not see how any
reasonable construction of the testator's language can support
this claim. Of course, it is conceded that the right "to de-
mand and receive," may apply to either a right to demand
and receive possession or to the vesting of title, or to both, but
under the trust provisions of the will the right "to demand
and receive" cannot apply alone to possession because, if it
applied simply to possession—the right on attaining the age
of thirty to receive the possession of the trust property, title
to which had already vested—where can there be found any
provision in the will conferring title or vesting the devise?
If possession only is to be implied from the right "to demand
and receive" the *corpus* on attaining the age of thirty years,
then there must be some other language in the will from which
a gift or vesting of title to the trust property at the testator's
death may be implied. But clearly there is no other provision
in the will except the one under consideration which makes
any gift to the beneficiaries at all except save of income, and,
if the right "to demand and receive" applies only to posses-
sion, there is no gift of title at all. In fact if it were not for
the right "to demand and receive" no estate, either contingent

or vested, would be given to the beneficiaries under the will. Undoubtedly, however, the testator intended that the beneficiaries should receive both title and possession and if the right "to demand and receive" applies only to the gift of possession, the gift of title, as there are no other words in the will which expressly provide for it, must be implied from this gift of possession. But as the gift of possession is certainly future and contingent on the beneficiary attaining the age of thirty years, it is the rule of the authorities that the gift of title implied from this gift of possession is likewise future and contingent. (*Moore* v. *Smith*, 9 Watts, 403; *Leake* v. *Robinson*, 2 Merriv. 363; *Stead* v. *Platt*, 18 Beav. 50; *Merry* v. *Hill*, L. R. 8 Eq. 619; *Gifford* v. *Thorne*, 9 N. J. Eq. 702.)

The rule of these authorities is announced in *Moore* v. *Smith,* 9 Watts, 407: "The ruling principle of a case like this is that where there is no separate and antecedent gift which is independent of the direction and time for payment, the legacy is contingent; and it seems to be as well founded in reason, as rules of interpretation usually are. Where a gift is only implied from a direction to pay, it is necessarily inseparable from the direction, and must partake of its quality; inasmuch that if the one is future and contingent, so must the other be."

But that the gift of the title or the vesting in right of the *corpus* of the trust property as also the right of possession was what the testator intended the beneficiaries should take under the right "to demand and receive" on the contingency that they attained the age of thirty years is further apparent from a consideration of the trust provision. As the testator says, each beneficiary as she attains that age is "to demand and receive" a portion of his estate as her distributive share *to have and to hold the same to her and her heirs forever.* Now this latter portion of the provision—the *habendum* clause—clearly defines the nature of the interest in the devised property which each beneficiary was "to demand and receive" on attaining the age of thirty years; she was to receive the property "to have and to hold the same to her and her heirs forever." The purpose of a *habendum* clause is to limit, define, and make clear the estate granted or conveyed. It has a technical meaning and applies, as used here, to the passage of title in fee. As the only words in the will under which title can pass are those giving the right "to demand and receive,"

it is quite apparent that in using the language of the *haben-dum* clause, which is employed when title in fee is to pass, that it was such title which the beneficiaries had a right "to demand and receive" as they attained the prescribed age. As said in *Wheeler* v. *Wayne Co.*, 132 Ill. 599, [24 N. E. 625], "to have and to hold, etc., is but a *habendum* clause, the purpose of which is merely to define the estate which the grantee is to take in the property conveyed." As used in this will it defined the estate which the beneficiaries were to take under their right "to demand and receive," and as they could only take it on attaining the required age, no title was passed or could pass to them until that period arrived.

It is true, as asserted by appellants, that a *habendum* clause is not necessary to be used to pass title under the law of this state. But this is beside the question. Here the testator has used it. He made his own will and undoubtedly gave importance to this language as defining the estate which on attaining the required age he intended the beneficiaries should take. If he had not deemed it important he would not have employed it. It cannot be rejected, but on the contrary, must be considered and given effect, as must all the language of a will. It has a well-recognized meaning as defining the estate the testator intended the beneficiaries were to take—a fee simple —and it must be construed, to be given any effect at all, as having been employed by him to indicate that intention. Nor is there anything in the use of the term "distributive share" used in the devise, or considering here the use of the words "distributive share" and "share" found in the devise over, militating against the view that but a contingent remainder was devised to the beneficiaries. These are not terms of devise nor were they attempted to be used as such by the testator. The devise is in the words giving the right "to demand and receive" and a devise to the beneficiaries is found nowhere else in the will. The words "distributive share" in the devise itself simply refer to the *quantum* of the estate which the beneficiary is to take, if she takes at all, and which is explicitly mentioned by the testator to be one third of the residue of his estate, and as used in the devise over the words "distributive share" or "share" under no construction can be considered as terms of devise but are used in specifying the contingency upon which the devise over shall be operative.

Aside from these considerations addressed particularly to the devising clause of the will which, of itself, satisfies us that the devise to Ethel Pomroy was of a contingent remainder, this conclusion is further supported by the devise over. While there is a conflict in the authorities elsewhere as to the effect of a devise over in determining whether a remainder which is not fixed by direct words of devise is contingent or vested, the matter in this state is settled.

In the case of *In re Rogers,* heretofore referred to, the testator had bequeathed to his grandson a legacy of ten thousand dollars to be paid in certain proportions and as he attained certain years of age; the first payment to be made when he attained fifteen, the final payment when he reached twenty-five. The clause in the will making this bequest provided further that "if my said grandson die before arriving at the ages herein named, then the remaining or unpaid amounts of said bequests, together with the income thereon, I direct shall be distributed . . . to the brother and sisters of myself and wife . . . share and share alike." During the administration of the estate the grandson died at the age of six or seven years and before any of the bequests were payable to him. On distribution of the estate his mother applied for payment of the legacy to her as his heir at law under the claim that the bequests to her son vested in him on the death of the testator, asserting that a bequest "payable" or "to be paid" to a person "at" or "when" he shall attain the age, etc., vests the estate immediately in him and his interest is transmissible to his representatives. The question squarely before the court in that case was whether the legacy was vested or contingent. It was held to be contingent and in reaching that conclusion the court took into consideration the devise over and said: "If the last clause (the devise over) had been omitted, it might no doubt be successfully claimed that there was a present and absolute bequest, the times of payment only being deferred, and that it vested in the legatee on the death of the testator. That clause, however, makes it clear, we think, that the intention was not to make an absolute bequest, but a conditional one to take effect only if the legatee should reach the ages named for its payment." Hence, in this state the rule is that a devise over is to be construed as indicating an intention on the part of the testator not to make a vested devise, and ap-

plied to the devise here in question, imparts additional force to the conclusion which we think apparent from the language of the devise itself that only a contingent devise was made to Ethel Pomroy; that it was only to take effect in title and possession on the condition of her attaining the age of thirty.

While it is insisted by appellants that the word "as" employed in the provision "and as each of my said daughters and granddaughter arrives at the age of thirty years she shall have the right to demand and receive," etc., is not conditional, and, hence, the provision quoted in which it is used did not operate to create a condition precedent to the vesting of the *corpus* but operated to give an absolute interest in fee in it to the beneficiaries and denoted only the time when the remainder should take effect in possession, we perceive no room for discussion on this point, as we are of the opinion that reasonably construed the right "to demand and receive" the *corpus* of the trust property applies to both title and possession. It appears to us that if there is any one intention clearly disclosed by the will itself it is that the beneficiaries are "to demand and receive" nothing until they attain the age of thirty. Futurity is annexed as of the very substance of the gift. And while the word "as" may not be directly conditional, still it imports contingency and is generally so construed. (*Colt* v. *Hubbard,* 33 Conn. 281; *Siebert's Appeal,* 13 Pa. St. 501; 2 Fearne on Remainders, p. 145.)

We are mindful, too, of the rule particularly insisted upon by appellants that where the only gift is in a direction to pay and deliver at a future time, or what is asserted to be the equivalent here, the "right to demand and receive" at a future time, and the entire *interim* income is given to the beneficiary, a present gift of title to him is presumed to have been intended by the testator. Under this rule appellants insist that from the gift of the entire *interim* income to the beneficiaries here it is to be inferred that the testator intended a present gift of the *corpus* to them and that the right "to demand and receive" as used by him only applied to the possession of the *corpus,* and, therefore, the devise became vested on the death of the testator subject to become divested should any beneficiary die without issue and before obtaining possession of her share of the *corpus.* The general rule at common law is, as asserted by appellants, but without considering other objections which respondents

CLVII Cal.—30

urge against its application to this particular devise, it is at best but a rule of presumption to be indulged in only when there is no other language employed by the testator showing a contrary intention. But, as we have heretofore pointed out, the language actually used by the testator in connection with the right "to demand and receive," and the other matters in the will to which we have called attention, defines the estate which is to be taken by the beneficiaries in the future under this right as being both title and possession. Futurity applies to both by the express language of the testator so there is no room for indulging in any presumption.

We perceive no reason for pursuing this branch of the inquiry further. In our opinion, taking the trust provisions of the will in their entirety, it was the intention of the testator to make two gifts—a devise to the trustees to pay the income to the beneficiaries and a devise of the *corpus* both in title and possession to them on attaining the age of thirty years; that the attainment of this age was a condition precedent to the vesting of the devise at all, and that, as the beneficiary, Mrs. Soule, did not reach the required age, she never acquired any vested interest whatever in the trust property.

This brings us to a consideration of the claim asserted by the appellants—the minor children of Mrs. Soule—that though the devise to their mother was a contingent remainder and the condition under which she was to take, or the devise over was to become effectual, never occurred, still the testator did not fail to dispose of the *corpus* of the trust property, but the minor appellants took directly as purchasers under the will of Francis Blake the share which would have vested in their mother had she attained the age of thirty years.

In this regard it is insisted that the provision for a devise over in the event of the death of a beneficiary "without issue and before she receives her distributive share" raises a devise by implication in favor of the minor appellants as the issue of their mother.

We think this position is sound and sustained in reason and by the authorities.

Bequests by implication have from remote times been sustained where no direct language in a will is found to support them but where from informal language used such reasonable construction can be placed on it as implies an intention to

make a bequest. As said in 29 Am. and Eng. Ency. of Law, p. 382: "Implication may arise under a recital, reference of elliptical expression which necessarily implies something else as contemplated by the testator; from the form of the gift; or from a direction to do something which cannot be carried into effect without of necessity involving something else as a necessary consequence."

While, of course, conjecture and speculation cannot be indulged in to import into the will of a testator something which no language used by him warrants simply because he seems to have omitted something which it is reasonable to assume should have been provided for, still when he has used language which can be reasonably interpreted to raise a devise, it should be so construed. Looking at this devise over, it would appear to be absurd to say that while the testator provided that in the event of death "without issue" of a contingent devisee a remainder over is to take effect, yet if the contingent devisee leave issue the devise over shall be defeated and without benefit to either parent or child. To defeat attributing to the phrase such a purposeless effect, courts, as said in 1 Jarman on Wills, "will lay hold of slight circumstances to raise a gift in the child and thereby avoid imputing to the testator so extraordinary an intention as that the devisee or legatee over is to become entitled if the first taker have no child, but that the property is not to go to the child, if there be one, or its parents." And, as said in Underhill on Wills, section 468: "The court accordingly will raise an estate by implication in favor of a surviving child upon slight indication of an intention to that effect."

The presumption must be indulged in that the testator intended by his will to dispose of his entire estate and, if possible, its provisions must be construed to prevent intestacy. It is apparent under our view of the trust provision that as the devise to the mother of these minors was of a contingent remainder and neither the contingency upon which she was to take nor upon which the devise over was to pass occurred, the testator, unless a devise by implication was made to the issue of Mrs. Soule, died intestate as to the share which would have gone to her of the *corpus* of the property.

While the intention of the testator is to be reached from what he has said, this includes not only a determination of what he meant by the explicit use of language but also the

necessary implication arising from language which he has employed, though less explicit. This necessary implication when employed in raising a devise thereby "is called necessary because the court finds it so to answer the intention of the devisor." (*Coryton* v. *Helyer*, 2 Cox, 340, 348; *Weed* v. *Scofield*, 73 Conn. 670, [49 Atl. 22].) A strong probable implication of a devise arising from the will is sufficient (*Coale* v. *Smith*, 4 Pa. St. 376), and the tendency of modern cases is rather to extend than narrow the rule of raising devises by implication (2 Powell on Devises, p. 211).

Now, if we assume that the words of limitation over on death "without issue" are insufficient of themselves to raise a gift by implication to the issue (though in *Burton* v. *Black*, 30 Ga. 638, the inference, it is said, may arise from the phrase itself in the limitation over), yet the rule is that this implication may be drawn from slight circumstances appearing from the will. Now as to the circumstances and considerations indicative of such intention. In article III of the will referred to in the trust provision of article IV the testator provided for the payment of a number of legacies to relatives and friends, mainly the latter, and specified that, except in two instances, if any of the legatees should die before the testator, the legacies should go to the lineal descendants of such legatees. Subsequently in a codicil he provided that lapsed legacies should revert to his estate. It appears, therefore, that the testator knew exactly what language to apply when he wanted the legacies not to lapse on the death of the legatees and when he intended they should lapse and revert. It is to be assumed that the testator would be more solicitous for the welfare of his lineal descendants, as the issue of these beneficiaries would be, than for the lineal descendants of his friends, and as he provided in the first instance that the descendants of his friends should take so as to prevent a lapse of legacies, and knew how to change the provision so as to provide for a reversion of such legacies to his estate, it is a fair and just inference that in providing for the limitation over on the death of a beneficiary "without issue" that he intended the issue should take the share of a parent rather than that such share should revert to his estate, which would be the effect unless the phrase is to be construed as an implied devise to such issue. Aside from this we may look at the

possible consequences which would result from a construction
of the provisions of a will, for the purpose of determining
whether, where the language is not explicit but open to con-
struction, it was the intention of the testator that they should
follow.   All the beneficiaries were the lineal descendants of
testator and by the trust devise they are all treated with equal
favor.   Is it at all reasonable to say that when the testator
provided that a beneficiary should take an absolute estate on
attaining the age of thirty that in providing for a devise over
if she should die "without issue" he had no devising purpose
when referring to issue, but that such issue were only to take
by right of representation a share in the portion of the trust
property devised to their mother, as estate of which the testator
had died intestate, and along with the surviving beneficiaries
who might have actually attained the required age and already
received their two thirds of the entire trust estate, as is exactly
the situation here?   Or to take one of the illustrations of
counsel for the minor appellants.   If one of the daughters of
testator had died before attaining the age of thirty, leaving a
numerous family, and the two other beneficiaries had attained
thirty, married and died, never having had issue but leaving
their respective husbands surviving them, this situation would
be presented: the children of the deceased beneficiary would
divide two twenty-sevenths of the trust fund among their
number; their father would take one twenty-seventh thereof;
and the remaining eight ninths might pass forever away from
the line of Francis Blake.   Of course, it is insisted by respond-
ents, that this only presents a situation which the testator
should have provided against but has omitted to do.   But he
has met this situation and provided against such consequences
if a devise can be implied from the elliptical expression as to
issue, and these circumstances and consequences afford circum-
stances which naturally support this as the implied intention
of the testator.   In making his will the testator recognized
that his daughters and grandchildren were the natural objects
of his bounty and he devised his estate to them, contingent
however, on their reaching a designated age.   Having be-
queathed the interest which they should severally take in his
estate and designated when it should vest, he then proceeded
to provide for its disposition over should the contingency upon
which they should take not be met.   In making such provision

it naturally suggested itself to him that a beneficiary might die before attaining the age when she would be entitled to her share of his estate, but might leave children. It is to be assumed that the testator would have the same natural solicitude for the issue of the child as for the child herself, and contemplating the possibility of issue he provided that in the event of issue the share of the deceased beneficiary should not go over. This was a natural provision. Such issue would be his lineal descendants and naturally entitled to the same consideration from him as their parent. He recognized that in the event of issue their welfare would be a matter of solicitude on the part of their mother, and having this in view, he provided that the share which would be hers if she attained the age of thirty years should go over only in the event of her dying without issue before she received her share of the estate. He had the possibility of issue in his mind, and as he intended that the parent should not take unless she attained the age of thirty and intended that the devise over should not be effective if issue survived her, it seems the only reasonable inference to be deduced from the mention of issue at all that they were to take the share which otherwise their mother would have taken. As the devise over was to be ineffectual if the beneficiary died with issue and the testator intended to dispose of all his estate, this is the only effect which can be given to the mention of issue, if any effect is to be given at all.

That this is the construction to be given to the mention of issue is well supported by the authorities where the effect of such mention was involved when found in the limitation over of a devise. (*Ex parte Rogers*, 2 Madd. 449; *Burton* v. *Black*, 30 Ga. 638; *Myrick* v. *Hurd*, 31 Fed. 241; *Wetter* v. *United Hydraulic Cotton Press Co.*, 75 Ga. 540; *Sturges* v. *Cargill*, 1 Sandf. Ch. (N. Y.) 318; 1 Jarman on Wills, 500; *Bentley* v. *Kaufman*, 12 Phila. (Pa.) 435; *Still* v. *Spear*, 3 Grant's Cas. (Pa.) 307; *Kay* v. *Scates*, 37 Pa. 31, [78 Am. Dec. 377]; *Beilstein* v. *Beilstein*, 194 Pa. St. 152, [75 Am. St. Rep. 692, 45 Atl. 73]; *Kinsella* v. *Caffrey*, 11 Ir. Chan. 154; *Hauser* v. *Craft*, 134 N. C. 319, [46 S. E. 756]; *Luthieullier* v. *Tracy*, 3 Atk. 796.)

Quotations from an English and a couple of American cases will suffice, as all the other authorities harmonize with them. In *Ex parte Rogers*, 2 Madd. 449, the executor was

directed by the will to place one thousand pounds in a fund, in trust to pay the interest thereof to a niece during her life, "and at her decease without child or children the principal sum, with all interest due thereon, to go and be divided between her surviving sisters equally." The court held that there was a devise by implication of the thousand pounds to the children of the niece saying: "The residuary legatees cannot take because the residue only after payment of this legacy was given to them. It could not go to Hester Chambers, because she was only to take if M. D. Rogers died without children. As the testator did not mean to give it to the residuary legatees, and as he did not mean to die intestate as to any part of his property, to whom could it go but to M. D. Rogers or her children? Why mention children if he did not mean them to take? The existence of children was considered as material; so much so, that if there were any, the legacy was not to go over. By necessary implication the children must be considered as entitled to the £1000." In *Beilstein* v. *Beilstein,* 194 Pa. St. 152, [75 Am. St. Rep. 692, 45 Atl. 73], the devise over was in the event that the first taker died without family. It was held that there was a devise to her family by implication, if she left one, the court saying: "The devise over in case Gertie should 'die without leaving a family' is an implied devise to her family if she should leave one. It is only if she does not that the devise over is to take effect and there is a necessary implication that in the other unexpressed contingency of her leaving a family the estate is to go to them." In *Burton* v. *Black,* 30 Ga. 368, the rule is recognized that persons may take by inference, and that "this inference is generally associated with a limitation over, the inference itself being that those are intended to take the property who are designated to prevent its going over. . . . If property is given to A for life, and if he shall die without issue, then over to B, the issue of A are the persons whose existence is to prevent the property from going over to B; and the just inference is, that the 'issue,' without further description, are intended to take." The case first quoted from—*Ex parte Rogers* —is commented on in *Ranelagh* v. *Ranelagh,* 12 Beav. 200, but we do not understand it to be there overruled. If it were, there are still other ample authorities cited by us to sustain our conclusion as to a devise by implication. In this latter

case the judge deciding it declared his inability to answer the query contained in *Ex parte Rogers,* "why mention children if he (testator) did not mean them to take?"

While there are some authorities—we are only referred to three or four—holding that in a devise over "without issue" the word "issue" is a word of limitation, still the great weight of authority is to the contrary, and that as employed in the devise over under consideration here it is a word of purchase and implies a devise to the issue who thereby take as donees or purchasers under the will.

Those portions of the order appealed from are reversed with instructions to the trial court upon the findings as made (eliminating therefrom what are inserted as findings 19 and 20, but which are conclusions of law as pointed out in the early part of this opinion) to enter a decree distributing directly to the appellants, the children of Ethel Pomroy Soule, as purchasers under the last will of Francis Blake, deceased, the *corpus* of the trust property involved in this controversy.

Shaw, J., Henshaw, J., and Melvin, J., concurred.

Rehearing denied.