[L. A. No. 18744. In Bank. Dec. 1, 1944.]

Estate of EMMA C. HEARD, Deceased. JOHN W. HEARD, JR., Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Appellants.

A. H. Conard, Calkins, Hall, Linforth & Conard, Harry M. Conron, Borton, Petrini, Conron & Borton, Calvin H. Conron, Jr., and Maurice E. Gibson for Appellants.

Harvey, Johnston & Baker for Respondent.

THE COURT.—A petition for hearing in this case was granted to the end that further consideration be given to the contentions of the respondent. On such consideration we adopt as the opinion of this court the opinion of the District Court of Appeal, Fourth Appellate District by Presiding Justice Barnard with certain modifications.

"Emma C. Heard, a widow, died on November 23, 1939, leaving an estate valued at about $200,000. Her only close

relatives were a brother and a son, John W. Heard, Jr. At that time this son was 42 years old, his wife was 36 years old, and they had no children.

"Mrs. Heard left a will and a codicil, which were admitted to probate. There is nothing in the codicil which is material here. Of the seven sections of the will, the only controversy is with regard to the provisions of section IV. In section III, she made several small bequests which are not questioned, including one of five dollars 'and no more' to her brother. In section IV, which is here in question, she gave the bulk of her estate to the Bank of America in trust for the purposes therein named. After defining the powers and duties of the trustee and providing for its compensation section IV contains fifteen numbered paragraphs relating to what shall be done with the net income from the trust estate, to the termination of the trust and to the disposition of the remainder. Briefly summarized, the first eleven paragraphs provide for the following payments from the income: $200 a month to her son, John W. Heard, Jr., as long as he lives; $50 a month to a Mrs. Cummings as long as she lives; $25 a month to a Mr. Rice as long as he lives; $50 a month to a servant as long as she lives; $25 a month for the care of her dog as long as it lives; and the rest of the net income to her son, if living, otherwise to his lawful issue, if any, and otherwise to the lawful issue of Mrs. Cummings. It was also provided that if the net income was insufficient to cover all of these monthly payments it should first be used to pay the monthly allowance of $200 to her son or in case of his death to his lawful issue, and the balance prorated among the other beneficiaries; and that the trustee might at any time use the principal of the trust for the care and support of her son or of his lawful issue, if in its discretion this appeared necessary.

"Paragraph 15 contains a spendthrift clause relating to each beneficiary under the trust. Paragraphs 12, 13 and 14 read as follows:

" '12. This trust shall terminate upon the death of the last survivor of all of the persons named or designated as follows:

" '(a) Such of the children of said May Durham Cummings as may be living at the time of my demise.

" '(b) Said G. Stanley Rice.

" '(c) Said Eulalia Bethel, if she be in my employ at the

time of my demise, otherwise her death shall not be taken into consideration.

" ' (d) My said son, John W. Heard, Jr.

" ' (e) The lawful issue, if any of my said son John W. Heard, Jr., who may be living at the time of my demise.

" '13. Upon the termination of said trust as hereinabove provided under Paragraph 12 hereof, the whole of my said estate then remaining in the hands of my said trustee shall be forthwith and outright paid over and delivered to the heirs of the lawful issue of my son, John W. Heard, Jr.

" '14. If, at the termination of said trust as hereinabove provided, there should not then be living any lawful issue of my said son John W. Heard, Jr. then the whole of the residue of my estate shall be forthwith paid over and distributed as follows:' (Here follow provisions that $5000 shall go to the Grand Lodge of Masons of this state, $5000 to Bakersfield Lodge 224 of Masons, and the residue of the Estate to the University of California.)

"In due course, the son, John W. Heard, Jr., filed a petition under section 1080 of the Probate Code for a construction of this will and a determination as to the persons entitled to distribution. Answers and statements of their rights were filed by the trustee, the University of California and the lodge organizations. After a trial of the issues thus presented the court made findings and conclusions of law to the effect that, while the remainder of the will is valid and effective, all of the provisions of section IV are invalid and inoperative since they 'violate the rule against perpetuities . . . and violate the statutes of' this state; that the testatrix died intestate as to that portion of her estate which she attempted to dispose of through the provisions of section IV; and that all of that portion of her estate should be distributed to her son John W. Heard, Jr. as her sole heir at law. An order was entered accordingly and this appeal followed.

"The respondent's contention, which was accepted by the trial court, is that paragraphs 13 and 14 are void upon their face because they express the possibility that there will be living issue of the respondent at the time of his death; that the term 'issue' includes descendants of any degree; that if any issue of the respondent survived him paragraph 13 could not become operative to effect distribution until all issue of the respondent had died, making possible the identification

of the heirs of such issue; and that the will clearly discloses that the main intent and purpose of the testatrix was to provide for the maternal heirs of any issue of the respondent, or that the provisions of paragraph 14 should apply in the event there never was such issue. It is further argued that the attempt to carry out this paramount intention of the testatrix is abortive since paragraphs 13 and 14 are void; that paragraph 13 cannot be separated from the remainder of section IV without destroying the main intention of the testatrix to give the residue to the maternal and other heirs of the issue if such heirs existed; that for this reason all of section IV and all of the trust provisions are void; and that it follows that the testatrix died intestate in so far as any property affected by section IV is concerned. It will be noted that while the respondent contends that both paragraphs 13 and 14 are void the objections raised are addressed only to paragraph 13 and that what is claimed to be the main intention of the testatrix, to which everything else must give way, is drawn from paragraph 13 rather than from an examination of the entire will. . . .

██ "Under our statutes and decisions a will must be construed according to the intention of the testator as gathered from the language used in the entire will, effect must be given to the expressed intention so far as possible and intestacy must be avoided where and to the extent the expressed intention makes this possible." (Prob. Code, §§ 100, 101, 103, 105; *Estate of Puett*, 1 Cal.2d 131, 133 [33 P.2d 825]; see *Eaton* v. *Brown*, 193 U.S. 411, 413 [24 S.Ct. 487, 48 L.Ed. 730]; Rest.: Property: Future Interests, parts 3 and 4, § 241, comment (a) and comments on subsec. (2), § 242, comments (a), (b) and (c); Wigmore, Evidence (2d ed.) §§ 2458-2478.)

"Examining this will in its entirety it clearly appears, with respect to that portion of her estate which she attempted to dispose of through section IV, that the testatrix had the firm intention to provide for the respondent and for certain others, during their lifetime, and that the principal of the fund should not go directly to the respondent. The trust is to terminate absolutely on the death of the last survivor of certain lives in being. It also rather clearly appears that the testatrix intended to make provision for the lawful issue of her son if there should be any. She refers to such lawful issue at least eleven times in the will. In section III, in giving

certain personal property to the respondent, she provides that it shall go to his lawful issue if he is not living at the time of her death. In section IV, in giving certain advisory powers in connection with the management of the trust to the respondent, she gives the same powers after his death to such of his lawful issue as may survive him. In each of the provisions for the payment of a portion of the income from the trust, or at the discretion of the trustee a portion of the principal, to the respondent she includes a similar provision for payment to his lawful issue in case any survives him. In the event of the respondent's death without lawful issue, the income which would otherwise go to him is to go to Mrs. Cummings. The lawful issue of the respondent is also referred to in paragraphs 12, 13 and 14. The only reference to 'the heirs of' the lawful issue of the respondent is the one in section 13, which gives rise to this controversy.

''Insofar as disclosed by the language used in the entire will, the main intention of the testatrix appears to be to provide for the respondent and for his lawful issue, if any there be. The expressed intent seems to be to provide an income for her son during his life and thereafter to provide for rather than to disinherit any possible grandchildren.'' In the light of her testamentary plan it is inconceivable that the testatrix used the phrase ''the heirs of'' with the intention of cutting off her son's issue so that the heirs of such issue, and not the issue themselves would receive the distribution of the trust estate. ''That language is so inconsistent with her disclosed intent and with her general testamentary plan, as uniformly evidenced by the other parts of her will, as to suggest that it was used inadvertently; it has the effect of disinheriting any grandchildren, the natural objects of her bounty and for whom she makes provision in all other parts of section IV; and, finally, it does not accomplish a valid disposition even to such heirs.

''The language used in paragraph 13 expresses something which is different from the general intention which seems to be expressed by other language repeatedly used in other parts of the will. Obviously, a mistake was made in drafting either paragraph 13 or paragraph 14. Paragraph 14 gives the remainder to the organizations named in the event no lawful issue of the respondent are living at the termination of the trust, while under the same situation paragraph 13 would

give this remainder to the heirs of any lawful issue. Paragraph 13 is inconsistent for this reason as well as for the reasons above noted.''

If we disregard the words ''the heirs of'' in paragraph 13 or regard them as synonymous with the words ''lawful issue'' in that paragraph, the will would be complete, the trust would be good, and the disposition of the remainder would be clear. On the other hand, if we do not disregard the words ''the heirs of'' or regard them as synonymous with ''lawful issue'' that paragraph is void as unduly suspending the power of alienation. ''If a word has no meaning, or is absurd, or repugnant to the clear intention manifested in other parts, it may be regarded as surplusage, or restricted in its application.'' (*Estate of Wood,* 36 Cal. 75, 81; *Estate of Goetz,* 13 Cal.App. 292 [109 P. 492] ; *Estate of Spalding,* 84 Cal.App. 371 [258 P. 154] ; see 26 Cal.Jur. § 202, p. 887.) ▮ In our opinion the words ''the heirs of'' are repugnant to the clear intention manifested in other parts of the will and should be disregarded or regarded as synonymous with ''lawful issue.'' This interpretation carries out the dominant scheme and purpose of the testatrix as expressed in her will and not only avoids conflicts between portions of the will but protects the main intentions of the testatrix from being nullified by words that were obviously used by mistake.

Even if the words ''the heirs of'' could not be disregarded or regarded as synonymous with ''lawful issue'' it would not follow that all of section IV would be void simply because paragraph 13 was void as unduly suspending the power of alienation.

▮ ''If paragraph 13'' were ''eliminated from the will, paragraph 14, which still remains, provides that if there should not be any lawful issue of the respondent living at the time fixed for the termination of the trust the entire residue of the estate shall forthwith go to the organization named therein. The thing that would prevent such a result would be the fact that lawful issue of the respondent were then living. There is a natural implication from this provision that if there be such lawful issue living at that time the property is to go to that issue. (*Estate of Blake,* 157 Cal. 448 [108 P. 287] ; *Estate of Atkinson,* 110 Cal.App. 499 [294 P. 425] ; *Estate of Franck,* 190 Cal. 28 [210 P. 417].) . . . Such an implication is especially strong here since the provisions for

the termination of the trust and the immediate delivery and payment of the trust estate to someone are so definite, and since it corresponds exactly with the intention so clearly disclosed by all of the will except that part of paragraph 13 which provides for something the testatrix either did not intend to or could not do. . . .''

In our opinion, there is no doubt that paragraph 13 would be entirely separable from the other provisions of section IV, and that these other provisions could and should be given effect as a part of the will of the deceased. (*Estate of Troy,* 214 Cal. 53 [3 P.2d 930].) ''In that case, in applying the general rules for determining the question of severability, one of which is 'where there are valid and invalid clauses in a will, the question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator,' the court held that an invalid clause, the elimination of which would result in intestacy, was nevertheless severable since, as the court said: 'Our conclusion does not result in a disposition of the estate so different from what the testator contemplated nor so unreasonable that it must be presumed that the testator would not have made the valid provisions had he been aware of the invalidity of the others; it does not work injustice among the beneficiaries, nor defeat the dominant scheme and purpose of the testator in the disposition of his property; nor does it cause any important practical change in the testator's general scheme or result in any possibility that the property will go to others than those he intended; but, on the contrary, those whom the testator intended should benefit and whom he cherished will take by the plan which he devised.' '' (See, also, *Estate of Micheletti,* 24 Cal.2d 904 [151 P.2d 833].)

''The remaining provisions of section IV of the will here in question . . . carry out the intentions of the testatrix and they are not so inseparably woven with the provisions of paragraph 13 that they'' would have to ''be declared void, leading to a result . . . that the testatrix most clearly intended to avoid and prevent.''˜

For the reasons given, the order appealed from is reversed with directions to the probate court to enter its order upholding the provisions of section IV of this will as construed herein, and providing for distribution of the residue of the estate

at the proper time to the trustee named in section IV of the will, and with such other provisions for the ultimate distribution of the residue or the remainder thereof as are proper and appropriate and not inconsistent with the views expressed herein.

Respondent's petition for a rehearing was denied December 28, 1944.