[S. F. No. 17625. In Bank. May 26, 1949.]

MILDRED HALL BROCK, Appellant, v. ELBERT J. HALL, Respondent.

Lloyd W. Dinkelspiel, Donald W. Falconer and Heller, Ehrman, White & McAuliffe for Appellant.

Pillsbury, Madison & Sutro, Maurice D. L. Fuller, Francis N. Marshall and Noble K. Gregory for Respondent.

GIBSON, C. J.—The sole question before us is the proper interpretation of an instrument by which defendant Elbert J. Hall created a trust for the benefit of his two daughters, Mildred and Carolyn. Mildred seeks to recover the assets of the trust on the theory that she became entitled thereto on the death of her sister Carolyn, and she has appealed from a judgment entered upon the sustaining of a general demurrer to the complaint.

The trust instrument which was executed in 1924 provided that the trustee was to hold the property transferred together with the net income until the two daughters, "Mildred Miriam Hall, now sixteen years old, and Carolyn Mary Hall, now six years old, shall have respectively reached the age of eighteen years; provided that when said Mildred Miriam Hall shall have reached the age of eighteen years she shall thereafter be entitled to have paid to her by and receive from the said trustee one-half of the net income from said trust property thereafter accruing until she shall have reached the age of thirty-five years, whereupon she shall be entitled to receive and have turned over to her by the said Trustee and there shall go to and vest in her absolutely one-half of the said trust property together with one-half of the net income thereof, if any, there-

tofore accrued and undistributed; and when the said Carolyn Mary Hall shall have reached the age of eighteen years she shall thereafter be entitled to have paid to her by and receive from the said Trustee one-half of the net income from said trust property thereafter accruing until she shall have reached the age of thirty-five years, whereupon she shall be entitled to receive and have turned over to her by the said Trustee and there shall go to and vest in her absolutely the remaining one-half of the said trust property together with the net income thereof, if any, theretofore accrued and undistributed; that is to say, the trust hereby created shall terminate as to one-half of said trust property when said Mildred Miriam Hall shall have reached the age of thirty-five years, and as to the remaining one-half thereof when the said Carolyn Mary Hall shall have reached the age of thirty-five. . . .

"In the event of the death of said Mildred Miriam Hall, or said Carolyn Mary Hall, the portion of said trust property or of the income thereof belonging to such deceased shall, if such deceased shall have married and leave issue, go to and vest in such issue, or if such deceased shall be married and leaving her surviving a husband but no issue, then one-half of her respective share of said trust property shall go to such surviving husband absolutely and discharged of these trusts, and the remaining one-half . . . to the survivor of said Mildred Miriam Hall and Carolyn Mary Hall; or if either of the last mentioned persons shall die, never having married, then the share of such deceased in said trust property shall . . . go to and vest in the other of them surviving. . . ."

Upon reaching the age of 35 Mildred received the portion of the trust estate which was to be paid to her at that time. Carolyn married but her husband died, and she thereafter died before reaching 35, leaving no children. This action involves the portion of the trust estate which would have been paid to Carolyn had she lived.

Their father, the trustor, contends that, since there is no express gift to Mildred if Carolyn died a widow and without issue, such a gift can be raised only by implication, and that gifts may not be implied in *inter vivos* instruments, but only in wills. ■ The implication of gifts in wills rests upon the primary rule of construction that the duty of the court in all cases of interpretation is to ascertain the intention of the maker from the instrument read as a whole and to give effect thereto if possible, and it is well settled that, where the intention to make a gift clearly appears in a will, although perhaps

imperfectly expressed, the court will raise a gift by implication. (*Estate of Blake,* 157 Cal. 448, 468 [108 P. 287] ; *Estate of Sloan,* 7 Cal.App.2d 319, 340 [46 P.2d 1007] ; see *Estate of Heard,* 25 Cal.2d 322, 328 [153 P.2d 553] ; *Estate of Franck,* 190 Cal. 28, 31 [210 P. 417].)

Although there is some authority to the contrary, it has been held that the reasons for implying gifts in testamentary instruments are equally applicable to *inter vivos* declarations of trust and that gifts may be implied where a trustor establishes a trust during his lifetime. (*Eustace* v. *Dickey,* 240 Mass. 55 [132 N.E. 852, 858] ; *First Nat. Bank & Trust Co. of Yonkers* v. *Palmer,* 261 N.Y. 13 [184 N.E. 477] ; *Bank of New York* v. *Vanneck,* 68 N.Y.S.2d 226, 234; *cf. Manufacturers Trust Co.* v. *Chase Nat. Bank,* 171 Misc. 49 [11 N.Y.S.2d 895, 897] ; *In re Scott's Trust,* 322 Pa. 1 [184 A. 245] ; see, also, Rest., Property, §§ 115 [com. a], 272 [com. a], vol. 1, Appendix, p. 16; 30 Harv.L.Rev. [1916] 187; 2 Simes, Law of Future Interests [1936] p. 259; but see *Chater* v. *Carter,* 238 U.S. 572, 585-586 [35 S.Ct. 859, 863-864, 59 L.Ed. 1462].)

In support of his position that wills should be treated differently from *inter vivos* instruments the trustor argues that there are considerations affecting the determination of intent in wills which are not present in *inter vivos* transfers. He asserts that a will necessarily contemplates divesting the testator of all interest in the property disposed of by the will since nothing can come back to him personally and that there is a statutory rule favoring construction against intestacy. (Prob. Code, § 102.) It is true that where a testator makes a will disposing of his property he ordinarily has in mind transferring the entire property and does not intend any interest to pass by intestacy. It is also true that this is a factor which may not be present in the establishment of an *inter vivos* trust but which may be considered by the court in ascertaining the intent of a testator from an imperfectly expressed testamentary scheme. Where, however, a trustor clearly indicates his desires as to the disposition of the trust property, the absence of a rule of construction similar to that favoring construction against intestacy furnishes no reason for defeating that intent.

It is further argued that the trustor may be alive at the time an *inter vivos* trust instrument is construed and can make a second disposition of the trust property if the gift fails, and that this furnishes justification for making a distinction between such trusts and wills with respect to the implication of gifts. However, the possibility that the trustor may

be alive should have no effect upon the interpretation to be given the trust instrument. Its construction depends upon the trustor's intent at the time of execution as shown by the face of the document and not on any secret wishes, desires or thoughts after the event. (See *Foster* v. *Ypsilanti Sav. Bk.*, 299 Mich. 258 [300 N.W. 78, 82] ; *City Bank Farmers Trust Co.* v. *Macfadden*, 65 N.Y.S.2d 395, 397; 2 Scott on Trusts [1939] § 164.1, p. 830; *cf.*, *Bixby* v. *California Trust Co.*, *ante*, p. 495 [202 P.2d 1018].)

There appear to be no other reasons for treating wills differently from *inter vivos* transfers in trust with respect to the implication of gifts. As we have seen, the primary duty of the court in construing all documents is to give effect to the intention of the maker, and we can see no justification for any distinction in this regard between instruments operating *inter vivos* and those taking effect at death since the intention to be gathered from similar words or provisions, whether they be contained in a declaration of trust or a will, would ordinarily be the same. Accordingly, we are of the opinion that implied gifts may be raised in both wills and *inter vivos* transfers in trust.

When the intention to make a gift clearly appears from the instrument taken by its four corners and read as a whole, considering its general scheme, the property involved, and the persons named as beneficiaries, the gift may be implied. (*Estate of Franck*, 190 Cal. 28, 31 [210 P. 417].) Although the court may not indulge in conjecture or speculation simply because the instrument seems to have omitted something which it is reasonable to suppose should have been provided, a gift will be raised by necessary implication where a reading of the entire instrument produces a conviction that a gift was intended. (*Estate of Blake, supra,* 157 Cal. at p. 468 ; see *Estate of Franck, supra,* 190 Cal. at p. 32; *Estate of Swan,* 5 Cal.2d 635, 639 [55 P.2d 1171] ; *Estate of Vizelich,* 129 Cal.App. 347, 353 [18 P.2d 773] ; *Metcalf* v. *Framingham Parish*, 128 Mass. 370, 374.)

Gifts by implication have been sustained from remote times where no direct language is found to support them, and the tendency is rather to extend than narrow the rule raising such gifts. (*Estate of Blake*, 157 Cal. 448, 466, 468 [108 P. 287].)

There is no merit in the trustor's argument that, even though an actual, existing intention appears on the face of the instrument, the court may not imply a gift from a construction of the entire instrument, but must find some specific

clause which may be construed as operating to make a gift. This argument is obviously contrary to the decided cases and, if accepted, would render the doctrine of gifts by implication unnecessary. (See *Estate of McCray*, 204 Cal. 399 [268 P. 647]; *Estate of Franck*, 190 Cal. 28 [210 P. 417]; *Estate of Blake*, 157 Cal. 448 [108 P. 287]; *Estate of Sloan*, 7 Cal.App. 2d 319 [46 P.2d 1007]; see, also, Rest., Property, §§ 115a, 258 [com. g], 272, 323 [com. f], 367(2).) Accordingly, in ascertaining the intention of the trustor the court is not limited to determining what is meant by any particular phrase but may also consider the necessary implication arising from the language of the instrument as a whole.

In the present case, as we have seen, there is no express provision for a gift to Mildred of the remainder of the trust property upon the happening of the contingency which occurred, namely, that Carolyn died a widow and without issue prior to reaching 35, and the next question, therefore, is whether there is such a clear showing of the trustor's intent as to justify the implication of a gift to Mildred in this situation. The trust was established when the two children were minors, and the provisions of the declarations of trust demonstrate that it was created primarily for their benefit and that the trustor's purpose was to take care of his children so long as either of them was alive. The income was to be accumulated until each daughter became 18, and as each reached that age she was to be paid one-half of the income of the trust property until she became 35, when she was to receive one-half of the corpus and any accrued and undistributed income. If either daughter married and died leaving issue, the portion "belonging to such deceased" was to go to her issue, but if she left a husband and no issue, then "one-half of her respective share of said trust property" was to go to the husband and the remaining one-half to the surviving daughter, and if either died "never having married, then the share of such deceased in said trust property" was to go to the surviving daughter.

On its face the document was an absolute conveyance and did not expressly provide for a reversion to the trustor in any contingency. Instead, it referred to the trust property as "belonging to" the daughters and provided for distribution of the share "belonging to such deceased" in case of the death of either daughter. The general plan for disposition of the trust property shows that the trustor intended a surviving daughter to have all the property in the event the other specified beneficiaries were not in existence. We think it clear that it was

not the chance fact of marriage or nonmarriage which was to condition the gift to the surviving daughter, but the existence or nonexistence of a surviving husband or issue, the purpose being to provide first for each daughter and her issue, and second, in case of her death without issue, for those next entitled to her bounty, namely, her sister and a surviving husband, if any. (See *Eaton* v. *Hewitt*, 62 Eng.Rep. 591, 594.)

It is true that the instrument provided the property should go to Mildred in certain contingencies and that there are several contingencies for which no express provision is made, for example, if both children died prior to reaching 35 without issue or surviving husbands, or if a daughter should die leaving illegitimate issue, with or without a surviving husband. These factors, however, are insufficient to defeat the dominant plan of distribution shown by the trust document. The mere fact that an instrument is incomplete in one particular does not nullify an intention which is clearly shown. The paramount purpose of the trustor was to care for his daughters, and it would be absurd to say that he intended Mildred to take all if Carolyn died unmarried and to have half if Carolyn left a surviving husband, but to receive nothing if Carolyn died a widow without issue. The provisions for a gift to Mildred of one-half in the event Carolyn left a husband surviving and of all in the event she died "never having married" show the trustor's general purpose and plan, and tend to show an intent to make a gift in the contingency which did occur rather than to indicate the absence of such intent. (See *Metcalf* v. *Framingham Parrish*, 128 Mass. 370, 377.)

Any other interpretation would not only defeat the trustor's primary purpose of providing for his children, but would also impute caprice in the disposition of his property. In view of the situation of the parties the obvious and only reasonable intention to be gathered from the plan of distribution, when the instrument is taken by the four corners and read as a whole, is that a surviving daughter should receive all the property if a deceased child left no issue or husband surviving. Accordingly, a gift to Mildred in this contingency should be implied.

The trustor relies on California decisions where the court, while recognizing that gifts by implication may be raised in appropriate circumstances, refused to do so on the facts there presented, but those cases are not controlling because in none of them was the language or general plan similar to the wording and dispositive scheme involved here and in none of them

did the court find that there was a clear intent to make a gift. (See *Estate of Swan,* 5 Cal.2d 635 [55 P.2d 1171]; *Estate of Wattson,* 66 Cal.App.2d 743 [153 P.2d 87]; *Estate of Ottoveggio,* 62 Cal.App.2d 880 [145 P.2d 700]; *Estate of Kruce,* 10 Cal.App.2d 426 [51 P.2d 1174]; *Estate of Vizelich,* 129 Cal.App. 347 [18 P.2d 773].) The intent of the maker as disclosed by the will or trust document determines whether a gift should be raised by implication, and each decision must of necessity depend upon the wording of the particular instrument involved when considered with the intention manifested by the document as a whole. In the present case, when the language used is considered in the light of the dominant dispositive plan of the trust instrument, the necessary implication, as we have seen, is that a gift to Mildred was intended if Carolyn died a widow without issue, and the probability that the trustor intended to make a gift in this contingency is so strong as to nullify the existence of any other possible intent. Accordingly, the trial court erred in sustaining the demurrer to the complaint wherein Mildred sought to reach the remaining assets of the trust.

No question has been raised with respect to whether the property was vested in Carolyn subject to defeasance upon the happening of the specified contingencies or whether the vesting of her interest was subject to the condition precedent that she survive to the age of 35 (see *Estate of Blake,* 157 Cal. 448, 459-466 [108 P. 287]; Rest., Property, §§ 249-259) and, in view of the conclusion we have reached, it is unnecessary to decide this problem.

The judgment is reversed.

Carter, J., Traynor, J., and Spence, J., concurred.

EDMONDS, J.—''In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained thereon, *not to insert what has been omitted.* . . .'' (Code Civ. Proc., § 1858 [Emphasis added].) The declaration of trust disposes of the property upon three contingencies,[1] but it includes no provision vesting the corpus in at least four situations,[2] one of

---

[1](a) "shall have married and leave issue"; (b) "shall be married and leaving her surviving a husband but no issue"; (c) "shall die, never having married."

[2](a) "no issue, husband divorced"; (b) "no issue, husband predeceased"; (c) "no issue, husband survives, other sister predeceased [as to sister's ½ remainder share]"; (d) "never having married and other sister predeceased."

which has occurred. Without purporting to construe ambiguous language or to apply any of the established rules of construction grounded upon interpretation of particular language, the majority opinion, in effect, asks the question: What would the trustor have done about this situation *if* he had considered the possibility of such a contingency? Thus on the basis of conjecture this court decides to "insert what has been omitted" and by judicial disposition, to supply the omissions, whether accidental or intentional, of the trustor.

First, unquestionably there is no ambiguity in the terms used. By the language of the trust instrument, Mildred could receive the money if Carolyn "shall die, *never having married.*" Such language is clear and unequivocal, and by no judicial authority to interpret language can it be said to be synonymous with "unmarried at the time of death," which is the situation shown by the present record. (*Douglass* v. *Board of Foreign Missions,* 112 N.J.Eq. 361 [164 A. 489]; *Deal* v. *Logan,* 183 Okla. 513 [83 P.2d 563].) Next, considering the rule of construction relied upon in the majority opinion, it appears that in the development of the common law, certain phrases or expressions have come to carry particular meaning and to include implicit extensions or variations. In *Estate of Blake,* 157 Cal. 448, 469 [108 P. 287], the term "elliptical expression" was aptly used to describe such phrases. In that case the language in question was the much litigated phrase "die without issue." Centuries of judicial construction have given to those words certain connotations which permit reading into them a meaning beyond that of common usage. The same may be said of many other "elliptical expressions." Such is the basis of and explanation for the common law Rule in Shelley's Case and the Worthier Title Doctrine. So also, the courts have developed certain restricted areas in which gifts by implication will be raised. For example, that result has been approved by implying a cross-remainder where there was a deed to A and B for life as tenants in common and a gift over of the fee to X. Upon the death of either A or B, a cross-remainder will be implied for the life of the survivor of A and B. (See Rest. Property, § 115; 2 Simes, Law of Future Interests, p. 258.) Further illustrations are the rules for determining if a future interest is vested or whether a given limitation creates a condition precedent to vesting. (See Rest. Property, § 254, et seq.)

These specific rules of construction, limited to particular words, phrases or situations, are to be distinguished from the principle relied upon in the majority opinion, which is stated as: ''When the intention to make a gift clearly appears from the instrument taken by its four corners and read as a whole, considering its general scheme, the property involved, and the persons named as beneficiaries, the gift may be implied.'' Under this rule prior decisions are of little assistance, for, as the Chief Justice recognizes, ''each decision must of necessity depend upon the wording of the particular instrument involved when considered with the intention manifested by the document as a whole.'' The statement, therefore, is far broader than any of the traditional rules which rest upon specific language and stem from case law. To lift the document ''by its four corners'' and construe it according to its ''general scheme,'' allows a court to reach any desired result by reciting generalities and stating a positive, if unexplained, conclusion therefrom. Such a rule of construction leads to the disposition of property in such manner as a majority of the judges may determine most fully accords with their views as to whom the corpus of a trust should be distributed.

Although in this jurisdiction there is sufficient authority to sustain such ''liberal'' construction in the case of a will (*Estate of Heard,* 25 Cal.2d 322 [153 P.2d 553]; *Estate of Puett,* 1 Cal.2d 131 [33 P.2d 825]), the underlying reason for the rule makes it inapplicable to an *inter vivos* declaration of trust. ''[A] will must be construed according to the intention of the testator as gathered from the language used in the entire will, effect must be given to the expressed intention so far as possible and *intestacy must be avoided* where and to the extent the expressed intention makes this possible.'' (*Estate of Heard, supra,* p. 326 [emphasis added].) This conclusion rests upon the long recognized policy to avoid intestacy if that result is not absolutely required by the deficiencies of the testamentary writing. ''A construction which results in partial intestacy will not be used unless such intention clearly appears. It is said that the courts will prefer any reasonable construction, or any construction which does not do violence to the testator's language, to a construction which results in partial intestacy.'' (2 Page on Wills § 926, p. 847.) This same policy is expressed in our code: ''[O]f two modes of interpreting a will, that is to be preferred which will prevent total intestacy.'' (Prob. Code, § 102.) Accordingly this court, in applying the rule which, *in order to prevent intestacy,* justi-

fies a construction of the testator's directions in accordance with the general dispositive scheme and not dependent upon his specific language, gives effect to the applicable statute.

But this *inter vivos* trust presents a very different situation from that of a will. The trustor is alive. If there is no gift by implication there will be a resulting trust in the trustor; no question of intestacy can arise and, consequently, no complete frustration of the trustor's intent. Under such circumstances there is no basis for a judicial implication of a gift where none was made.

The trust instrument in this case fails to make any disposition of the property upon the happening of the contingency which occurred. The present case does not require a determination of the trustor's intent at the time of execution of the declaration of trust for at that time, it is clear, he had no intention with regard to this contingency. Apparently the first time such a possibility came to his notice was when the contingency occurred, and this litigation is the result of his first reaction to the situation. Where, then, is there any justification for a decision based upon such a general intent or dispositive scheme as would avoid intestacy? "In construing . . . [a declaration of trust], we are not called upon to strain the meaning of words, as is sometimes done to avoid intestacy when wills are to be construed." (*Chater* v. *Carter*, 238 U. S. 572 [35 S.Ct. 859, 863, 59 L.Ed. 1462].)

The majority opinion states that "it has been held that the reasons for implying gifts in testamentary instruments are equally applicable to *inter vivos* declarations of trust. . . ." The statement is too broad, and the authorities cited therefor either have not analyzed the question or are not here controlling. In four of the five cases cited, the trustor was dead at the time the contingency arose which provided the basis for a gift by implication and, for that reason, considerations of the policy against intestacy were applicable. (*Eustace* v. *Dickey*, 240 Mass. 55 [132 N.E. 852]; *Bank of New York* v. *Vanneck*, 68 N.Y.S.2d 226; *Manufacturers Trust Co.* v. *Chase Nat. Bank*, 171 Misc. 49 [11 N.Y.S.2d 895]; *In re Scott's Trust*, 322 Pa. 1 [184 A. 245].) In the other case, *First Nat. . Bank & Trust Co. of Yonkers* v. *Palmer*, 261 N.Y. 13 [184 N.E. 477], apparently the trust was established to carry out a settlement of property rights with only a nominal trustor, and the court mentioned that the trust instrument was wholly contractual in form. Further, in none of these cases is there

any adequate discussion of the applicability of the rules concerning gifts by implication to *inter vivos* trusts, and the decisions construing wills are cited without comment.

For substantially the same reasons, the discussions in the cited texts are inapplicable to the question here presented. The Restatement comment and the discussion in Simes and the Harvard Law Review all refer to the orthodox rule of construction which allows a cross-remainder by implication and are not authority for a construction of a declaration of trust by way of the "four corners of the instrument" in the manner in which that generalization is now used. Clearly, the settled rules of construction of particular language are equally applicable to a will and to an *inter vivos* trust. It is only when the court purports to fill the omissions in the instrument by construing it as a whole apart from specific language that the question of distinction between an *inter vivos* trust and a will is of importance, for there is no policy of construction against intestacy which is applicable to a declaration of trust.

As justifying the decision, the Chief Justice states: "Where, however, a trustor clearly indicates his desires as to the disposition of the trust property, the absence of a rule of construction similar to that favoring construction against intestacy furnishes no reason for defeating that intent." This assumes the conclusion. Here, granting that had the trustor thought of it he reasonably might have included a gift over to the survivor if one daughter dies never having married *or* was unmarried and without issue at the time of death, it is just as reasonable to suppose that he had no intention of authorizing a distribution of the corpus of the trust in any contingency for which no express provision was made.

And I cannot agree with the statement that "[O]n its face the document was an absolute conveyance." The declaration of trust conveyed all of the trustor's interest in the property only if gifts may be implied for the unspecified contingencies and, as a matter of factual inference, such gifts may only be implied if he granted his entire interest. This argument, therefore, falls of its own weight.

For these reasons I would affirm the judgment.

Shenk, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied June 23, 1949. Shenk, J., Edmonds, J., and Schauer, J., voted for a rehearing.