## IN THE MATTER OF THE ESTATE OF STANLEY J. KLEIN, DECEASED.

WILLIAM FELSTINER AND CHARLES W. STIEFEL, JR., CO-EXECUTORS AND CO-TRUSTEES, ETC., PLAINTIFFS-RESPONDENTS, v. JOSEPH J. LYONS, JR., INCOME BENEFICIARY, ETC., DEFENDANT-APPELLANT, AND ANNE K. KLEIN, WIDOW OF STANLEY J. KLEIN, ETC., AND WALTER H. JONES, GUARDIAN *AD LITEM* OF STANLEY J. KLEIN, JR., ETC., *ET AL.*, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 13, 1955—Decided July 22, 1955.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Milton T. Lasher* argued the cause for appellant.

*Mr. Abram A. Lebson* argued the cause for plaintiffs-respondents.

*Mr. Paul T. Huckin* argued the cause for defendant-respondent Anne K. Klein (*Mr. Irving S. Reeve,* attorney).

*Mr. Irving C. Evers* argued the cause for defendant-respondent Walter H. Jones as guardian *ad litem* of Stanley J. Klein, Jr., etc. (*Mr. Walter H. Jones,* attorney, *pro se*).

The opinion of the court was delivered by

JAYNE, J. A. D.   Actions instituted to elicit the judicial construction of a last will and testament commonly project the two basic questions.   Will the court execute the clear intent of the testator which is not fully or definitely expressed in the will, or will it, by a strict technical adherence to the form of words and their literal meaning, or the absence thereof, suffer the discernible intention of the testator to be defeated?   *Van Houten v. Pennington,* 8 *N. J. Eq.* 745, 749 (*E. & A.* 1852); *Barrett v. Barrett,* 134 *N. J. Eq.* 138, 148 (*Ch.* 1943); *Scarborough v. Scarborough,* 134 *N. J. Eq.* 201

*(Ch.* 1943); *Guaranty Trust Co. v. Catholic Charities of Archdiocese of New York,* 141 *N. J. Eq.* 170 *(Ch.* 1948).

To effectuate the deducible intent, is the court itself required to inject into the will some term or provision which the testator neglected to include although in reasonable probability he would have inserted it had he contemplated the occurrence of the contingency? *Stout v. Cook,* 79 *N. J. Eq.* 573, 579 *(E. & A.* 1911); *Leyendecker v. Leyendecker,* 142 *N. J. Eq.* 449, 454 *(E. & A.* 1948); *Burlington County Trust Co. v. Di Castelcicala,* 2 *N. J.* 214 (1949).

Those questions have high ascendancy in the field of our considerations in the present case for here the will seems to radiate the true intention of the testator in the particular with which we are concerned, but it is axiomatic that judicial construction cannot be formulated upon what a testator meant to say in his testament, but only upon what he meant by what he did say. *Stryker v. Sands,* 4 *N. J.* 182, 189 (1950).

One Stanley J. Klein, a resident of Englewood, New Jersey, died on June 14, 1953. His wife, Anne Klein, and his two children, Stanley J. Klein, Jr., and Linda Anne Klein, survived. He had executed his last will and testament on November 30, 1948, and a codicil thereto on December 8, 1949, both of which were duly probated, and the plaintiffs qualified as co-executors and co-trustees. The present action was instituted by the latter in their representative capacities in the Chancery Division in quest of a judgment construing certain provisions of the will relating to the distribution of portions of income derived from the residuary testamentary trust.

The pertinent terms and provisions of the will and codicil are here reproduced:

"Second: I give, devise and bequeath all the rest, residue and remainder of my estate, whether real or personal and wherever situate the same may be (hereinafter sometimes called my 'residuary estate'), to my trustees hereinafter named, In Trust, Nevertheless, for the following uses and purposes:

(A) To hold, invest and reinvest the same and to collect the income therefrom during the lives of my son, Stanley J. Klein, Jr.,

and my daughter, Linda Anne Klein, and to pay out the net income therefrom or to apply the net income therefrom, as the case may be, as follows:

(a) Two and one-half percent (2½%) of said net income shall be paid to Samuel L. Neidorf as long as he is employed by Empire Box Corporation (a Delaware corporation) or by any of its subsidiaries; should his said employment cease, then this portion of the net income of said trust shall be disposed of as provided for in subparagraph (c) of paragraph Second of this my Will.

(b) Two and one-half percent (2½%) of said net income shall be paid to Joseph J. Lyons, Jr., as long as he is employed by Empire Box Corporation (an Illinois corporation) or by any of its subsidiaries; should his said employment cease, then this portion of the net income of said trust shall be disposed of as provided for in subparagraph (c) of paragraph Second of this my Will.

(c) The balance of said net income shall be paid, in equal shares, to, or applied, in equal shares, to the support, education and maintenance of, my said children, Stanley J. Klein, Jr. and Linda Anne Klein, or the whole of the balance of said net income shall be paid to or applied to the benefit of the survivor of them.

\*        \*        \*        \*        \*        \*        \*        \*

Fourth: It is my wish that my executors and trustees shall continue to retain, in their absolute discretion and for such length of time as they may determine, any stock which I may own in Empire Box Corporation (a Delaware corporation) and any of its subsidiaries and Empire Box Corporation (an Illinois corporation) and any of its subsidiaries. I have spent a good part of my business life in developing the businesses of these corporations, and I am most desirous that my executors and trustees continue these businesses. I fully realize that the operation of said business may, in certain years, be unprofitable or may result in losses, and that the losses may be substantial. Nevertheless, I direct that my executors or trustees shall continue to hold the said stock in the trust created hereunder for such length of time as they may decide in their absolute and sole discretion. I further direct that neither my executors nor trustees shall be held liable in any way whatsoever or be surcharged should the retention of said stock as an investment result in a loss, substantial or otherwise, to the said trust."

Subdivision (c) was altered by the codicil to read in part:

"(c) Out of the balance of the said net income one-third (1/3) thereof shall be paid to my wife, Anne Klein, and the remaining two-thirds (2/3) of the said balance of the said net income, and after the death of my said wife the entire balance of the said net income, shall be paid in equal shares to, or applied in equal shares to the support, education and maintenance of my said children, Stanley J. Klein, Jr. and Linda Anne Klein. \*  \*  \*"

Stated succinctly, the inquiry originally addressed to the court sought an instruction concerning the right of Neidorf and Lyons to continue to receive the income bequeathed to them respectively in subparagraphs (a) and (b) of the "Second" clause of the testator's will should the plaintiffs in their representative capacity sell all of the capital stock of the decedent in the designated Delaware and Illinois corporations and their subsidiaries.

Subsequent to the institution of this action and before the rendition of the decision in the Chancery Division, the plaintiffs with the approval of the court sold the stockholdings of the testator in the Empire Box Corporations for $4,400,000. The present appeal now implicates only the bequest to Lyons, who retains his employment with the Empire Box Corporation, the corporation of Illinois, under the new ownership, and asserts that notwithstanding the disposal of all the interests of the estate in the corporation and its subsidiaries, he continues to be entitled to receive the designated share of the income from the testator's residuary trust.

The plaintiffs invite primary attention to subdivision (b) of the "Second" paragraph of the will in which the testator bequeaths two and one-half percent of the net income of his residuary trust to the appellant Joseph J. Lyons, Jr. The source of the uncertainty experienced by the plaintiffs inheres in the provision that Lyons shall enjoy the receipt of the designated share of the income *"as long as he is employed by Empire Box Corporation (an Illinois corporation) or by any of its subsidiaries; should his said employment cease,* then this portion of the net income of said trust shall be disposed of as provided for in subparagraph (c)  *  *  *." Our italics denote the particular phraseology of the subparagraph upon which the major weight of consideration centralizes.

Significant information concerning the testator's state of mind can be harvested from paragraph "Fourth" of his will in which he divulged the wish "that my executors and trustees *shall continue to retain,* in their absolute discretion and *for such length of time* as they may determine" his stock in Empire Box Corporation, the Delaware company, and in

Empire Box Corporation, the Illinois company, and their subsidiaries. The testator exposed the reason for his wish. "I have spent a good part of my business life in developing the businesses of these corporations * * *." The fact was that the testator owned all of the capital stock of the Delaware corporation and 55% of the issued shares of the Illinois company. Manifestly he regarded those corporations as his own.

Neidorf was at the time of the execution of the will general manager of Empire Box Corporation of Stroudsburg, a wholly owned subsidiary of Empire Box Corporation, the Delaware company, and Lyons was general manager of Empire Box Corporation, the Illinois company, at South Bend, Indiana. Hence there was a unity between the future welfare of the business enterprises and a continuance of the services of the two named executives.

One at once recognizes the synthesis of the testator's expressed wish that his representatives would continue the businesses "for such length of time" and his donation of income to the appellant "as long as he is employed" and "should his said employment cease." Did not those ideas manifestly congregate in the testator's mind in the composition of the will? Was not the one period intended to be commensurate with the other? Were not the donations to Neidorf and Lyons attached in the nature of bonus gratuities to encourage a continuance of the services of the two legatees in the beneficial interests of his business enterprises which his representatives were authorized to conduct for his estate "for such length of time" as they might determine? Was not his expression "should his said employment cease" directly associated with the anticipated contingency that after "such length of time" his representatives would sell or liquidate the stockholdings of his estate in those business enterprises? Those are questions of supreme pertinency which characterize the facial features of the will.

It may be immediately acknowledged that a court may not give effect to a merely supposititious intention of a testator which has no expression in the will. *In re Gold-*

faden's Estate, 7 N. J. 450 (1951); Rosencrans v. Fry, 12 N. J. 88, 96 (1953). But a court may give effect to an intentional purpose where the express language gathered from the entire will and assembled in appropriate coordination manifestly indicates the intended purpose by rational implication. Words have an invisible connection called context and also silent branches named implications by means of which they often become quite distinctly revelational. Lord Eldon spoke of a probability of intention so strong that a contrary intention cannot be supposed. *Wilkinson v. Adam*, 1 V. & B. 422, 466, 35 Eng. Rep. 163, 180 (Ch. 1812). *Vide*, collation of authorities in *Daly v. Rogers*, 132 N. J. Eq. 200, 205 (Ch. 1942); *Russell v. Russell*, 16 N. J. Super. 589, 592 (App. Div. 1951); *Clapp, Wills & Adm.*, § 228, p. 535 and § 108, p. 255; 1 *Jarman on Wills* (7th ed.) 556.

The notion that the testator purposed to bestow upon Lyons a monetary reward absolute *in praesenti* for his friendship and fidelity to the testator and for the services he had performed in the past is certainly imaginative. An unqualified bequest would have effectuated that intention. The testamentary donation is conspicuously *in futuro* and its enjoyment by the legatee *in futuro* expressly made dependent upon the condition that his employment in the testator's established business would not meanwhile cease.

In this manner the testator exhibited in his will a foremost and clearly discernible intention to provide for the perpetuation of his existing business enterprises, and evidently "for such length of time" at least as his representatives should determine the continuance of the enterprises to be beneficial to his trust estate, *viz.*, his widow and children, the natural objects of his bounty. We must realize that the shares of stock of those corporations comprised eighty-five percent of the *corpus* of the residuary trust.

The purpose is entirely comprehensible from an acquaintance with the express and implied terms of the will. To the contrary it would seem to tax the elasticity of surmise and conjecture to suppose that the testator desired Lyons to continue to draw 2½% of the net income of his residuary

estate after his employment had lost its attachment to the testator's estate. The gift, the continued employment, the anticipated resultant benefit to the testator's trust fund, the ultimate sale were the integrated peas in the pod.

In indeavoring to envision other hypotheses the following vagrant questions intrude. Was it the testator's intention to deny his representatives the authority to discharge Lyons and thus establish him in his employment permanently? If on the contrary the testator intended to confer upon his representatives the authority to discharge Lyons and they had done so, would not his employment then have ceased and his beneficial interest in the trust have terminated?

It would seem imperative to attribute some import to the words "as long as he is employed" and "should his employment cease." Is it not more fantastic than rational to resolve that the testator intended to delegate to the unknown purchasers and new owners of the businesses, and perhaps their successors, a derivative power under his (the testator's) will either to prolong Lyons' employment or at any time to terminate it with the consequent extinguishment of Lyons' interest in the testamentary trust? Absurdity refutes itself.

Then, too, it would seem to be a hazardous departure from the main channel of safe reasoning if we were to be enticed by the disclosure that the testator's businesses were in law corporate organizations. Suppose we postulate that the purchasers of the controlling stock of the Empire Box Corporation (of Illinois) transferred its assets to the Paper Box Corporation of California, with which latter corporation Lyons continued his services in the pursuit of the same enterprise formerly conducted by Empire. Is there any cause to believe that the testator desired to assess a portion of the income of his trust obviously created for the primary benefit of the surviving members of his family in order indirectly to promote a business no longer identified with his own energetic and constructive efforts of the past, or without any possible financial return to the trust?

It is time to convert this discussion from the style of a questionnaire into a statement of conclusions.

In quest of the intention of the testator, our search has been almost exclusively confined to the language of the will and its patent implications. The scrivener of the will painted a picture of the testator's intention on a small canvas, but a picture it is.

Before closing we allude to an extraneous factual circumstance which tends significantly to confirm our final conviction. In a previous will the two employee-legatees of like shares in the income were Wilson and Lyons. Wilson withdrew from his employment to enter the military service. The testator revoked his gratuity to Wilson and substituted the employee Neidorf with Lyons. This is somewhat of an accessory vestibule through which some light falls upon the testator's intention to annex the gift to the prospectively beneficial services of the legatee. *Cf. Fidelity-Philadelphia Trust Co. v. Jameson*, 137 *N. J. Eq.* 385, 391 (*Ch.* 1946); *Orcutt v. Hoyt*, 6 *N. J.* 46, 53 (1950). Surrounding circumstances are often illuminative. *Cf. In re Savin's Estate*, 131 *N. J. Eq.* 563 (*Prerog. Ct.* 1942), affirmed *sub nom. Campbell v. Willard*, 133 *N. J. Eq.* 279 (*E. & A.* 1943).

We conclude, as did the judge of the Chancery Division, that the testator intended by the terms of his will that the income bequests to Neidorf and Lyons should cease if and when the plaintiffs consummated a sale of all of the stockholdings of the testator's estate in the Empire Box Corporations.

The judgment is affirmed.

CLAPP, S. J. A. D. (concurring). I agree with the majority that the judgment should be affirmed and that our decision should rest upon the doctrine of implications. I agree too that it is to be implied that the testator here intended to attach to Lyons' bequest a condition, namely, that the payments to him of income were to cease when the estate sold its stock in both Empire Box Corporations (or at least the Illinois corporation). But the majority relies upon Lord Eldon's rule, and I cannot agree that our decision can be made to stand with that much repeated rule.

Before examining that rule, some reference must be made to the doctrine of implications. Usually this doctrine is invoked in order to establish a gift by implication. 5 *American Law of Property* (1952) 183 to 189 (written by Casner). But there is no reason why it should not also be invoked so as to raise up, by implication, a provision which operates to cut down a gift under the will.

On close inspection it may be said that under this doctrine two conditions must exist before an implication will be made.

In the first place, where there has been an oversight on the testator's part, not with respect to the matter of expression, but with respect to ideas, the court can be of no aid. We may furnish words, but never intentions. The first of the two conditions then is this: an implication will not be made unless a reading of the will produces on the mind of the court a conviction that the testator at the time of the will actually and in truth had an intention to make a provision not found there. *City Bank Farmers Trust Co. v. Hentz*, 107 *N. J. Eq.* 283, 292 (*Ch.* 1930); *Bishop v. McClelland*, 44 *N. J. Eq.* 450, 453 (*Ch.* 1888); *Denise's Executors v. Denise*, 37 *N. J. Eq.* 163, 170 (*Ch.* 1883); *McCoury's Ex'rs v. Leek*, 14 *N. J. Eq.* 70, 73 (*Ch.* 1861); *Hollon and Huckley ads White and Wife*, 23 *N. J. L.* 330, 335 (*Sup. Ct.* 1852); *Hanneman v. Richter*, 62 *N. J. Eq.* 365, 369 (*Ch.* 1901), affirmed 63 *N. J. Eq.* 803 (*E. & A.* 1902); *Brock v. Hall*, 33 *Cal. 2d* 885, 206 *P. 2d* 360, 363 (1949); *Bond v. Moore*, 236 *Ill.* 576, 86 *N. E.* 386, 387, 390 (1908); *Metcalf v. Framingham Parish*, 128 *Mass.* 370, 374 (1880); *Boston Safe-Deposit & Trust Co. v. Coffin*, 152 *Mass.* 95, 25 *N. E.* 30, 32 (1890); *Sanger v. Bourke*, 209 *Mass.* 481, 95 *N. E.* 894, 895 (1911); *Bailey v. Bailey*, 236 *Mass.* 244, 128 *N. E.* 29, 30 (1920); *In re Simanton's Estate*, 118 *Vt.* 202, 104 *A. 2d* 918, 920 (1954).

The second condition is this. We must be convinced from the will not only that it contains but a fragment of the testator's actual intentions, but also that we can see, in the fragment given us, the contour of that which is not stated. 2 *Powell, Real Property* 710 (1950); *cf. Hendrick v.*

*Mitchell,* 320 *Mass.* 155, 69 *N. E.* 2d 466, 469 (1946), citing *Bailey v. Bailey, supra; Hope v. Potter,* 3 *K. & J.* 206, 210, 69 *Eng. Rep.* 1083, 1085 *(Ch.* 1857). The implication depends upon the apparency of the entire image, to some degree, from an observation of the portion that is visible. *Harvard Trust Co. v. Attorney General,* 329 *Mass.* 79, 106 *N. E.* 2d 269, 272 (1952).

I come now to the question which concerns me here, namely, what assuredness must we have with respect to these two conditions, before we will make the implication. Lord Eldon held that the implication will not be made unless there is a probability of an intention on the testator's part so strong that a contrary intention cannot be supposed. Nearly all cases in this state dealing with implications reiterate this rule.

Indeed in the seventh edition (apparently this appears neither in the first nor the latest, the eighth edition) of Jarman's work, it is said that this assuredness must reach the status of clarity. See the passage quoted in *Russell v. Russell,* 16 *N. J. Super.* 589, 593 *(App. Div.* 1951) from 1 *Jarman, Wills* 556 *(7th ed.).* See also *City Bank Farmers Trust Co. v. Hentz,* 107 *N. J. Eq.* 283, 292 *(Ch.* 1931) referring to a conviction "beyond any reasonable or intelligent doubt." See the paragraph in *Den ex dem. Nelson et ux. v. Combs,* 18 *N. J. L.* 27, 38 *(Sup. Ct.* 1840) using the words "obviously" and "plainly"; *Maxwell v. Maxwell,* 122 *N. J. Eq.* 247, 250 *(Ch.* 1937), quoting this paragraph from the *Combs* case. See also the following cases, employing the word "clear" or a similar term: *Swetland v. Swetland,* 100 *N. J. Eq.* 196, 207 *(Ch.* 1926), *Id.,* 102 *N. J. Eq.* 294 *(E. & A.* 1928); *Camden Trust Co. v. Birch,* 131 *N. J. Eq.* 542, 546 *(Ch.* 1942); *Patterson v. Read,* 42 *N. J. Eq.* 146, 149 *(Ch.* 1886); *Van Houten v. Pennington,* 8 *N. J. Eq.* 745, 749 *(E. & A.* 1852); *In re Devries Estate,* 36 *N. J. Super.* 29 *(App. Div.* 1955).

I cannot find clarity in this will. I cannot say that the implication which the majority finds to exist here is the only one which could rationally be attributed to Klein or (to use

Lord Eldon's formula) that an inconsistent intention *"cannot* be supposed." However, before we pass judgment on Klein's intentions, we need to know the circumstances.

Klein was, as the guardian *ad litem* says, "justly proud" of this business. His father had founded the Illinois corporation, and (the executors observe) Lyons had been associated with Klein in its management "longer than anyone else"— for many years one of its chief executive officers and at Klein's death its Executive Vice President, Director and General Manager. The lower court found Lyons to be a valuable executive whose efforts had contributed materially to the success of the business.

We do not know how much $2\frac{1}{2}\%$ of the income of the net estate before the sale of the stock might have come to. However, taking the sum of $3,376,642 obtained for the stock, said to be $\frac{7}{8}$ths of the gross estate, and estimating estate and inheritance taxes and fees, one might question whether Lyons' bequest would have been so alluring to a top executive of a successful corporation as in any very substantial way "to serve as [an inducement] to secure for the business [his] continued services" and to serve to prevent him from accepting a position with another concern. This the lower court found was the motive for the gift.

It may be noted too that until after the death of the testator's two adopted children, both infants, the will (a codicil provided for the testator's wife who was not mentioned in the will) contained no beneficiaries whatsoever other than Lyons, Neidorf and these children. And it should be added that the testator's trustees (so one respondent says) are both lawyers with no "extensive knowledge of the industrial world in general, or the paperboard box business in particular."

With those circumstances in view, I come back to the point suggested: could this testator reasonably have entertained any intention other than that stated in the majority opinion? For example, could the testator not have thought, when he made his will:

"In the first place, I will give Lyons an income bequest, by way of reward for his long and invaluable services which have contributed so much to the business and indeed, through that business, to my own great satisfaction in life; and, in the second place, I will make that reward conditional on a continuance by him of these services to the company *during the time the estate holds stock in the company.* Of course my trustees, through a board elected by them, cannot fire him just to eliminate that bequest."

Can any one say, as Lord Eldon put it, that such an intention *"cannot* be supposed"? Under the supposition I have made, the condition that Lyons continue in the employ of the company, is to run only so long as the estate owns the stock; while under the majority's hypothesis, the legacy to Lyons is to run only that long. Each proposition requires a provision to be implied in the will in order to complete its statement.

Notwithstanding the supposition I have advanced, I nevertheless hold with the majority that Klein, when he made his will, *probably* intended to terminate Lyons' legacy when the estate sold its stockholdings in the Illinois corporation. His attention, it is true, was turned somewhat on the oblique, and more directly toward that which he was "most desirous" of, namely, to have his "executors and trustees continue these businesses." Nevertheless I have a conviction, drawn from the will, that in all likelihood his intention in bequeathing the legacy to Lyons was not to make a donation to him (except in an incidental way), but rather to secure for the estate a financial benefit while the estate owned the stock.

I, along with the majority, find a persuasive circumstance here to be the elimination of Wilson as a beneficiary. Further see 5 *N. J. Practice* 259 at *n.* 13 (1950). This circumstance—taken with the fact that the testator did not then select Lyons as the sole beneficiary, but brought in Neidorf from the Delaware corporation—definitely indicates that the testator was interested in these men because they could be of service to the estate.

The critical question in this case, as above stated, is what should be the standard of proof here. I think Lord Eldon's rule and the rule calling for clarity are too strongly stated.

In my view the criterion should be simply probability; a provision should be implied if we are of the opinion that in all probability the testator actually intended that very provision. Such a standard produces a far more just result, than if we were to refuse to make any implication at all. We extend our efforts, as we ought, toward effectuating the testator's intentions. But—and this is the heart of the matter—the result reached does not, I think, do any violence to the overriding policies of the Statute of Wills which require the testator's intentions to be integrated into the paper propounded. For we derive a probability as to his designs from the very words on that paper.

The English cases seem to be opposed to these views. But it will be found upon an examination of the facts presented by cases in this country that a substantial number of authorities accept the more liberal position advanced here. 2 *Powell, Real Property* 710–713 (1950), and cumulative supplement. See the New York cases referred to in *Russell v. Russell*, 16 *N. J. Super.* 589, 595 (*App. Div.* 1951).

For the reasons stated, I concur in the view that the judgment should be affirmed.